### GUNN v. EWAN.

(Circuit Court of Appeals, Eighth Circuit.  March 20, 1899.)

No. 1,114.

1. PARTNERSHIP—COMMISSIONER TO SETTLE PARTNERSHIP ESTATE—COSTS OF ACCOUNTING.

   A commissioner was appointed in a suit for the settlement of a partnership, and empowered to take charge of all the partnership property, collect the assets, pay the debts, and divide the remaining property between the partners. On the making of his final report, after nearly 10 years, a reference became necessary to state his accounts. *Held;* that the costs of such reference, including the fee of the master, should be borne by the commissioner.

2. SAME—POWERS OF COMMISSIONER.

   A commissioner appointed by the court to settle a partnership estate, which consisted of a large amount of real estate and over $25,000 of bills receivable, has power to employ and pay the necessary assistants to enable him to properly look after and handle the property, as well as to procure such legal services as are reasonably required, although he is himself a lawyer; and his employment of his partner as attorney is not objectionable.

3. RECEIVERS—LIABILITIES—EMBEZZLEMENT BY CLERK.

   A receiver, or a commissioner with the powers of a receiver, is personally liable for the embezzlement or misappropriation of the funds of the trust estate by his clerk or employé.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

George Gillham (C. F. Greenlee, on the brief), for appellant.
John J. Hornor and E. C. Hornor, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.   In October, 1888, a suit was pending in the United States circuit court for the district of Arkansas between the appellant, John Gunn, and one William Black, for a dissolution of the partnership existing between them, for an accounting, and for a distribution of their property or its proceeds. On October 26, 1888, the appellee, Parker C. Ewan, was appointed a commissioner in that suit by the circuit court, and was empowered to take possession of all the property of the partnership, to collect the notes and accounts, to lease the real estate, and to collect the rents, pay the taxes and debts of the firm, and divide the property that should remain between its members. He entered upon the discharge of his duties on November 3, 1888. On December 1, 1897, the court ordered him to file with its clerk an account of his receipts and disbursements from the date of his appointment to that time, referred his account to the clerk, and directed him to hear evidence, to restate the account, and to report it to the court. In due time the clerk reported that there was due to the commissioner from the partnership, Gunn & Black, a balance of $957.79. Exceptions to the report were filed and overruled, and a decree was rendered that the commissioner was entitled to receive a balance of $957.79; that Bena Black, as ad-

ministratrix of the estate of William Black, had paid her proportion of this amount; that the commissioner, Ewan, should recover of John Gunn $478.89; that a fee of $250 should be allowed to the clerk for taking and stating the account; that all costs should be paid, one-half by the appellant, Gunn, and the other half by the administratrix of Black; and that the commissioner should be finally discharged. This decree is challenged by the appeal of John Gunn. As no appeal has been taken by the administratrix of Black, we shall assume that a settlement has been made between her and the commissioner, and consider the accounting only as it affects the appellant, Gunn.

It is assigned as error that the clerk and the court below omitted from the accounting all the receipts and disbursements of the commissioner between November 3, 1888, and July 3, 1889. The record discloses the fact that the appellee received and disbursed moneys as commissioner during this time, that evidence regarding these receipts and disbursements was introduced before the clerk, that the order for the accounting expressly included these receipts and disbursements, and that the clerk entirely omitted to consider or state them in his report to the court. This was a plain error, and this assignment is sustained.

The objection that the costs of the commissioner's accounting ought not to be assessed against the appellant is also well taken. The commissioner was appointed and paid to collect and disburse the funds, and keep the accounts of the parties to this litigation; and they should not be required to pay the costs of obtaining a correct account of these receipts and disbursements, especially in view of the fact that the commissioner claimed that there was a balance of $2,287.51 due him, when the clerk found that there was only $957.79, and the truth seems to be that he was not indebted to them in any amount.

The other assignments of error are not tenable. The evidence does not warrant a reversal of the findings of the clerk and of the court that the $1,000 which Gunn paid to Ewan was paid him for his services as an attorney, and not on account of his services as a commissioner. Since Gunn had never paid him any part of the $4,000 which the court had allowed him for his services, there was no error, as against Gunn, in crediting the commissioner, in his account, with this allowance.

The clerk properly allowed to the commissioner the item of $1,-207.22 on account of his payment of the Ida Brown note. That note was signed by Gunn & Black, and that partnership was bound to pay it to Ida Brown. It was one of the debts which that firm owed, and which the commissioner was authorized to pay by the order which appointed him.

The contention that the commissioner had no authority to employ and pay the salaries and traveling expenses of clerks and assistants has no foundation. The record shows that he was vested with the usual powers of a receiver,—to take all the property of this partnership, to wind up its business, and to distribute to the partners the property or proceeds which remained after the

93 F.—6

debts of the partnership were paid. There were more than 14,000 acres of land; there were town lots and houses; there were notes and bills receivable which amounted to more than $26,000. The commissioner had ample power to obtain the necessary assistants to handle and dispose of this property, and the evidence fails to show that his expenditures on this account were either unnecessary or excessive. The presumption is that they were fair and judicious.

The objection to the allowance of the amounts which he paid for legal services is equally weak. In the conduct of the business of this partnership, and in the course of the discharge of his duties, the commissioner appears to have expended $515.50 for the services of attorneys at law. On the face of the case, this certainly was not an unreasonable or excessive amount to apply to such a purpose in winding up and distributing so large an estate. The suggestion that he had no right to employ counsel, because he was a lawyer himself, is entitled to no consideration. He was not appointed commissioner to try the lawsuits of Gunn & Black with strangers. Nor was the employment of his partner to perform these services objectionable. It was his duty to employ a man of learning and ability, in whom he had confidence, and no better evidence of the wise discharge of that duty occurs to us than the fact that he employed a man in whom he had so much confidence that he had formed a partnership with him years before.

The fee of $250 which the court allowed the clerk for hearing the evidence, examining the vouchers, and stating the accounts was not excessive. It was fair and reasonable.

The result of a consideration of all the evidence in the record is that the decree below must be reversed. But we hesitate to refer this case back to the trial court for another accounting. While the vouchers are not included in the record before us, and it is difficult, perhaps it is impossible, to accurately state the account between the commissioner and the appellant, and to find the exact balance, yet the evidence in the record has satisfied us that the indebtedness of the commissioner to the partnership, or of the partnership to the commissioner, is a very small amount, in any event, and must be less than the expense of another trial of this issue. This accounting has remained unsettled for more than 10 years. The most important witnesses are dead. The former clerk of the commissioner, whose acts and accounts present the most serious questions in the case, passed away years ago. Mr. Black is dead. Mr. Ewan, the commissioner, has been attacked by disease, and so weakened that his memory is much impaired. It seems probable that, the longer this litigation is continued, the more difficult it will become to reach a just and accurate result. In view of these considerations, we have concluded that the interests of all parties will be best subserved by the rendition of a definite decree which will conclude this litigation. To this end, we have carefully examined and considered all the evidence in the record. It conclusively shows that one of the

clerks of the commissioner received $1,162.37 of the moneys of Gunn & Black, for which neither he nor the commissioner have ever accounted to them.    This man was one of the clerks for whose salary we have allowed the commissioner, and for whose acts and omissions he became responsible when he intrusted to him the duty of receiving and accounting for the trust funds which the court had appointed him to watch and preserve.    There are other items of the account whose allowance is debatable, but, on the whole case, our conclusion is that if this sum of $1,162.36 is charged against the commissioner, in addition to the charges contained in the account stated by the clerk, the result will be substantially right and just to all the parties to this controversy. As the account stated by the clerk shows a balance of $957.79 in favor of the commissioner, this charge will bring him in debt to the partnership in the sum of $204.57, and to the appellant in one-half of that amount, or $102.28.    The order of this court will accordingly be that the decree of the court below be reversed, and that the case be remanded to that court with directions to enter a decree that, except as therein adjudged, the exceptions to the clerk's report are overruled; that in the account of the commissioner, as stated by the clerk, an additional charge against him must be made of $1,162.37, the amount which was collected by his clerk and was not accounted for; that the true statement of his account is that he is indebted to Gunn & Black in a balance of $204.57; that he shall pay to the appellant, John Gunn, one-half of this amount, or $102.28; that he shall pay the costs of the accounting between himself and Gunn & Black, and the $250 allowed to the clerk; that, in case of a failure to make such payments within 60 days after the entry of the decree, the parties entitled to these amounts may have execution to collect them; and that when their payment is made the commissioner shall be discharged.    The costs in this court will be assessed against the appellee.