(June 20, 1901.)

# DALLIBA v. RIGGS.

[67 Pac. 430.]

TRANSFER OF PROPERTY BY DEED—CONTRACT TO TAKE STOCK IN COR-PORATION AS PAYMENT, IN PART—SECURITY FOR BALANCE—LIEN UPON PROPERTY SOLD.—Where a party sells real estate and personal property by quitclaim deed, and at the same time makes a contract, by the terms of which he agrees that the purchaser may sell to other parties or organize a corporation, and in case of a corporation, he to receive a certain portion of the paid-up nonassessable stock, to be placed in the hands of a trustee to be named by him, and such stock is issued and placed as by the terms of the contract agreed upon, the balance of the purchase price to be paid out of the net earnings of the property so'd, he accepts such stock as his security for such balance, and has no lien upon the property so sold.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Dietrich, Chalmers & Stevens, for Appellants.

"Equitable lien" is a phrase of expansive meaning, but we take it to mean one of two things—namely, a lien arising by operation of law—a vendor's lien; or a lien intended by the contracting parties, said intention having failed for some reason to be evidenced by a formal instrument of mortgage. Plaintiffs seem studiously to avoid any claim to a vendor's lien in terms and for obvious reasons: 1. By the terms of the contract in question, the vendee was authorized to dispose of said property free of liens or claims. 2. By accepting one-third of the stock of the corporation, Dalliba accepted a new and substitute security. (*Greenberg v. Cal. Bituminuous Rock Co.*, 107 Cal. 667, 40 Pac. 1053.) 3. The property sold was both real and personal, possession of all being delivered to the vendee, the whole having been sold *en masse* without segregation of purchase price. Such a sale cannot reserve a vendor's lien. Where there is a sale of both real and personal property for a gross sum, the vendor's lien does not exist, because the court cannot

accurately ascertain and define the amount of the charge to be imposed on the land and enforced out of it. (Fetter on Equity, 234, and citations.) 4. Plaintiffs pray for foreclosure, and the court grants a decree of foreclosure upon personal property of which the defendant company and its grantor Riggs has had the actual and exclusive possession since 1892. Vendor's lien on personal property depends on possession by the vendor. (Rev. Stats., sec. 3443.) The original vendor, Dalliba, only owned one-third interest in the contract when suit was brought. Young and Cutbirth are assignees, each of one-third. Only the vendor, not an assignee, can have vendor's lien. (Rev. Stats., secs. 3440, 3441.) A grantor's lien on the premises conveyed, for the purchase price, is a personal privilege, not assignable with the debt; nor can the creditor of the grantor be subrogated to the same. (*First Nat. Bank v. Salem Flour Mills,* 39 Fed. 89, and see page 95, where Judge Deady quotes from the opinion of Chief Justice Field in the leading case of *Baum v. Grisgby,* 21 Cal. 176, 81 Am. Dec. 153.) Section 3440 of our statutes is section 3046 of the Civil Code of California and the same doctrine is held in that state. (*Avery v. Clark,* 87 Cal. 624, 625, 25 Pac. 919; *Gessner v. Palmateer,* 89 Cal. 92, 24 Pac. 608, 26 Pac. 789; *Woolley v. Wickerd,* 97 Cal. 71, 31 Pac. 733; *Ketchum v. St. Louis,* 101 U. S. 306, 25 L. ed. 999; 1 Jones on Mortgages, sec. 162.) Decree is erroneous for insufficient description of property. There is no sufficient description in complaint or decree. The facts are on all-fours with those involved in *Crosby v. Doud,* 61 Cal. 557, where it was held such judgment was void on collateral attack. This extreme view is modified in *De Sepulveda v. Baugh,* 74 Cal. 468, 5 Am. St. Rep. 455, and note, 16 Pac. 223, and it was held that such error must be corrected upon appeal or by motion. (*Railway Co. v. Jordan,* 87 Cal. 23, 25 Pac. 273.) The right to sell property is incident to its ownership, but may the owner not for a consideration bind himself not to sell for a period? Ownership of and power to vote stock may be separated. (*Smith v. San Francisco etc. Ry. Co.,* 115 Cal. 584, 47 Pac. 582.) A corporation may pledge its unissued stock, but there is a difference of opinion as to whether the pledgee is

liable as an absolute stockholder on such stock. (Cook on Stock and Stockholders, sec. 465, and note; Beach on Private Corporations, par. 69.) In the United States, and especially in the state of Illinois, by the laws of which this transaction should be governed, the general rule is that a corporation may even purchase its own stock. (Cook on Stock and Stockholders, sec. 311, and note, 314; *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150, 25 N. E. 680; *Bank v. Salem,* 39 Fed. 89; *Burgess v. Seligman,* 107 U. S. 20, 2 Sup. Ct. Rep. 10; *Matthews v. Albert,* 24 Md. 527; *Union Saving Assn. v. Seligman,* 92 Mo. 635, 1 Am. St. Rep. 776, 15 S. W. 630; *Trust Co. v. Weed,* 2 Fed. 25; *Houston Ry. Co. v. Bremond,* 66 Tex. 159, 18 S. W. 448; *Powell's Appeal,* 133 Pa. St. 550, 19 Atl. 559; *Protection Ins. Co. v. Osgood,* 39 Ill. 69; *Melvin v. Lamar Ins. Co.,* 80 Ill. 446, 22 Am. Rep. 199; *Peterborough Ry. Co. v. Nashua,* 59 N. H. 385; *Casquet v. Crescent City B. Co.,* 49 Hun, 496.)

N. H. Clark, M. K. Young and S. J. Rich, for Respondents.

The forty-third alleged error to the effect that the findings of fact and conclusions of law are intermingled is not apparent. All the findings of fact may be reached by the rule laid down in *Levins v. Rovegno,* 71 Cal. 273, 12 Pac. 161. The contract in question was beyond the jurisdiction of the court. All authorities hold that when a paper is beyond the jurisdiction of the court, secondary evidence may be introduced, to which point we cite the following: *Bishop v. American Preservers Co.,* 157 Ill. 284, 48 Am. St. Rep. 317, 41 N. E. 765; *Thompson Electric Co. v. Palmer,* 52 Minn. 174, 38 Am. St. Rep. 540, 53 N. W. 1137; *Gordon v. Sering,* 8 Cal. 50; *Zellerbach v. Allensberg,* 99 Cal. 73, *Knickerbocker v. Wilcox,* 83 Mich. 200, 21 Am. St. Rep. 595, 47 N. W. 125; *Wisconsin River etc. Co. v. Walker,* 48 Wis. 614, 4 N. W. 803; *Burton v. Driggs,* 20 Wall. 125, 22 L. ed. 299. In *Wickersham v. Crittenden,* 93 Cal. 29, 28 Pac. 788, the court say: "The directors of a corporation hold a fiduciary relation to the stockholders, and have been intrusted by them with the management of the corporate property for the common benefit and advantage of each and every stockholder, and by their acceptance of this office they preclude themselves from doing any act or engaging in any transaction in which

their private interest will conflict with the duty they owe to the stockholders, and from making any use of their power of the corporate property for their own advantage. (Cook on Stocks. and Stockholders, sec. 684; Morawetz on Private Corporations, sec. 516; *Cumberland Coal Co. v. Sherman,* 30 Barb. 571; *Hoyle v. Plattsburgh etc. R. R. Co.,* 54 N. Y. 329, 13 Am. Rep. 598; *Barnes v. Brown,* 80 N. Y. 535; *San Diego v. San Diego etc. R. R. Co.,* 44 Cal. 106; *Wilbur v. Lynde,* 49 Cal. 209, 19 Am. Rep. 645; *Farmers' etc. Bank v. Downey,* 53 Cal. 466, 31 Am. Rep. 62; *Capital Gas. Co. v. Young.* 109 Cal. 143, 41 Pac. 869.) The case of *Gest v. Packwood,* 39 Fed. 525, is similar to the one at bar. A case directly in point is the *Charter Oak Life Ins. Co. v. Gisborne,* 5 Utah, 319, 15 Pac. 257, holding that an assignment of the rents, issues and profits of mining property for the payment of a debt creates a lien upon the *corpus* of the property sufficient to sell the whole thereof for the payment of the debt. A lien for the purchase money expressly reserved by a vendor in his deed and conveyance is a -lien created by contract and not by implication of law. It is a contract that the land shall be burdened with the lien until the note is paid. It is a real mortgage. It passes by an assignment of the note secured by it. It is foreclosed as a mortgage. (*Rust v. Carpenter,* 18 Colo. 340, 32 Pac. 992; *Ketchum v. St. Louis,* 101 U. S. 306; *Slide etc. Gold Mines v. Seymour,* 153 U. S. 509, 14 Sup. Ct. Rep. 842, 38 L. ed. 802.) In the case of *Anderson v. Wainwright,* 67 Ark. 62, 53 S. W. 566, the court says: "An agreement by one to whom a lien or promise is given to secure payment of a debt liquidated her claim from the rents of the premises, and not by a sale thereof, obligates her to refrain from enforcing the lien by sale only for a reasonable length of time, and when, after four years, the rents have failed to materially reduce the amount of the debt, she will be deemed to have waited a reasonable time and will be allowed. to foreclose and sell." (*Clemmens v. Luce,* 101 Cal. 432, 35 Pac. 1032; *Prescott v. Grady,* 91 Cal. 518, 27 Pac. 755; *Blen v. Bear River etc. Co.,* 15 Cal. 97.) The thirty-three thousand three hundred and thirty-four shares of stock delivered to Antisdale, as trustee, is absolutely void, because a corporation cannot

pledge its capital stock as security for an indebtedness, and for the further reason that a valid issue of stock for a valid purpose cannot be deprived of its voting power. (*Brewster v. Hartley*, 37 Cal. 27, 99 Am. Dec. 237; *Adams etc. Co. v. Deyette*, 5 S. Dak. 418, 49 Am. St. Rep. 887; *Ex parte Holmes*, 5 Cow. 426; *Ex parte Barber*, 6 Wend. 510.) A contract depriving stock of the power to vote is void as against public policy. (*Harvey v. Linville Imp. Co.*, 118 N. C. 693, 54 Am. St. Rep. 752; Thompson on Corporations, sec. 6604, Idaho Const., art. 11, sec. 4.) The following cases hold a vendor's lien is not waived by taking collateral security: *Burgess v. Fairbanks*, 83 Cal. 215, 17 Am. St. Rep. 230; *Tierman v. Thurman*, 14 B. Mon. (Ky.) 277; *Kent v. Williams*, 114 Cal. 537, 46 Pac. 462; *Kent v. San Francisco Sav. Union*, 130 Cal. 401, 62 Pac. 620; *Brisco v. Minah Consol. Min. Co.*, 82 Fed. 952; *Woolley v. Wickerd*, 97 Cal. 70, 31 Pac. 733. At the argument of this case, it was suggested by opposing counsel that real and personal property under this decree, could not be sold together. In the following cases it has been held that where real and personal property were given as security under one mortgage, a decree of foreclosure and sale of both real and personal property *en masse* were proper, and that separate sales were not necessary. (*San Francisco Breweries v. Schurtz*, 104 Cal. 420, 38 Pac. 92; *Tregear v. Etiwanda Water Co.*, 76 Cal. 537, 9 Am. St. Rep. 245, 18 Pac. 658; *Boyle Ice etc. Co. v. Gould*, 73 Cal. 153, 14 Pac. 609; *Wells v. Price*, 6 Idaho, 490, 56 Pac. 256; 1 Jones on Liens, sec. 40.)

STOCKSLAGER, J.—This is an appeal from a judgment rendered by the district court of Bingham county. The action was tried by the court. The amended complaint, upon which the action was tried, so far as the plaintiff was concerned, is a very voluminous one, beginning with folio 1 and ending with 75. We shall only refer to that portion of the complaint that bears directly on the issue involved as it occurs to us necessary to determine the questions before us.

The first allegation is that the defendant, the American Hydraulic Placer Company now is, and at all times herein men-

tioned after the fourteenth day of March, 1893, has been, a corporation duly organized and existing under the laws of the state of Illinois. The second alleges that on the eighteenth day of July, 1892, William S. Dalliba was the owner in fee of all those certain described mining properties in Mount Pisgah district, Bingham county, Idaho, which are fully described and particularly set forth in Exhibit "A," and made part of this complaint. Three says that on the eighteenth day of July, 1892, plaintiff Dalliba made, executed, and delivered to Leonard C. Riggs a deed conveying to said Riggs the property described in Exhibit "A"; that on the twenty-ninth day of July, 1892, said deed was recorded in Bingham county; that said deed recites that $60,000 of the purchase price of said property is unpaid, and provides for the payment according to the terms of a certain contract of even date, and which is made a part of this complaint, and marked Exhibit "B"; that said contract was a part of the transaction between himself and said Riggs, and that said contract provides the manner, form, and terms upon which said payments were to be made; and the property was sold and said deed made, executed, and delivered and recorded subject to the conditions of said contract, and not otherwise; and the time of said deed and contract and the payments to be made as herein set out were and are a lien upon the said premises for the amount of the purchase price remaining unpaid in the sum of $60,000, together with interest from the eighteenth day of July, 1892, at the legal rate of the state of Illinois. The sixth allegation is: That on or about the fourteenth day of March, 1893, under and in pursuance of one of the provisions of said contract Exhibit "B," said Riggs organized the defendant corporation the American Hydraulic Placer Company, and on said day conveyed to it by deed all the property described in Exhibit "A"; and said corporations took all of said property by virtue of said conveyance from said Riggs with full knowledge, acquiescence, and acceptance on its part and the part of its officers of each and all of the provisions of Exhibits "A" and "B," and had full knowledge of said lien of said Dalliba on the property conveyed to it as aforesaid. That the whole of the capital stock of said corporation composed one hundred thou-

sand shares, of which ninety-nine thousand nine hundred and ninety-eight shares were issued under the direction of said Riggs as the consideration for the said conveyance by him to it of said property described in Exhibit "A." That said corporation on or about the sixteenth day of April, 1894, in pursuance of the provisions of said contract Exhibit "B," and with the knowledge and consent of plaintiff Dalliba, issued to Albert Antisdel, as trustee, of Chicago, Illinois, thirty-three thousand three hundred and thirty-four shares of its capital stock, fully paid and nonassessable, in trust, the dividends upon which as they should be declared from time to time were set apart to be paid to said trustee as a trust fund until they should amount to the sum then unpaid to Dalliba, his heirs or assigns, upon the $60,000 of the purchase price of said property. That when said sum should be paid by said dividends, or otherwise, said stock was to be returned to said corporation. That said stock so issued and delivered to said trustee, as provided by Exhibit "B," could not be voted at any meeting of said corporation. That said contract specifically provided that the power of the trustee under said stock is only to receive dividends. That no statement showing the gross yield, expenses, or profits, or statement showing that there were no profits of said mining property, has, since the execution of said contract Exhibit "B," ever been made by Riggs or the American Hydraulic Placer Company, or either of them, or any one for them. That the property was mined and operated during the years of 1893, 1894, 1895, and 1896 by said corporation, but, as plaintiffs are informed and believe, was not worked to exceed one-fourth its capacity, but did, as plaintiffs are informed and believe, produce for each of said years, above all expenses of operation, $10,000. That, contrary to the conditions of Exhibit "B," said corporation leased all of said property for the year 1897 to William Winchell for the sum of $1,700 and the performance of assessment work of the value of $300. That said Winchell was without any experience in the mining business, and without sufficient capital to operate said property in the manner its magnitude required, and operated said property only to about one-fifth of the extent that the equipments and mining ground thereof would permit but, as

plaintiffs are informed and believe, said Winchell did extract from said property gold of the value of $8,000. Then follows an allegation that on the first day of August, 1897, the corporation executed to William M. Thomas, who was at that time, and now is, its president, a lease of all its property for the years 1898-99 on the terms that said William M. Thomas was to do the assessment work upon said mining property for said years, and further pay six per cent interest upon a certain promissory note executed by said corporation to itself on the thirtieth day of October, 1896, for $75,000, and assigned by it to one John Francis Smith, said note being payable in three years after date; the payment of which note, with interest at the rate of six per cent per annum, said lease recites, is secured by a deed executed by said corporation to said Smith upon all the property described in Exhibit "A." Said lease further recites that said William M. Thomas should also pay unto said Smith during the period of said lease the interest as it should become due upon a promissory note for $3,000, which note was executed by said corporation to itself on July 27, 1897, and assigned to said Smith, payable October 30, 1899, secured by a chattel mortgage on all the personal property of said corporation. That said William M. Thomas entered into the possession of said property on or about the date of the lease, and continued in possession thereof, and, claiming thereunder, mined, operated, and worked said property in 1898 and 1899. That said William M. Thomas was not, as plaintiffs are informed and believe, and therefore allege, experienced in the business of mining during the years he operated said property. That he had no person experienced in mining to operate the mines for him. That plaintiffs are informed and believe said Thomas did not operate said property to an extent more than one-fifth of the capacity, equipments, and mining grounds would permit. That plaintiffs are informed and believed, and allege, etc., that during said years there was extracted from said property by said Thomas gold to the amount of $40,000, not more than one-half of which was required for operating expenses. Plaintiffs are informed and believe, and therefore allege, that said lease from said corporation to said Thomas was made for the purpose of diverting the

earnings of said property from the payment of the dividends
upon the stock of said corporation, and particularly the stock
in the hands of Albert Antisdel, trustee, and to defraud said
Dalliba, his heirs, etc., from receiving payment of said $60,000.
That the plaintiffs have waited year after year, and an un-
reasonable time, for said corporation to perform the conditions
of said contract, but it has failed and refused to pay the plain-
tiffs, although the earnings of said mines are amply sufficient
to enable it to do so. That at the time of conveyance by
Dalliba to Riggs and at the time of conveyance by Riggs to the
corporation defendant it comprised a large area of rich placer
gold-bearing ground; also valuable sawmill; and numerous
other property is enumerated, all alleged to be of the value of
$250,000. That said American Hydraulic Placer Company
has worked out, and allowed to be worked out by said lessees,
more than one-half the gold-bearing ground of said property;
allowed the sawmill to be destroyed, as well as other property
on said ground; has sold and removed the hardware, nails, etc.,
to the value of $1,200; permitted the ditches to be destroyed,
the agricultural implements to become broken; has used and
appropriated the bar iron; the iron pipe to become rusted and
worn out for want of proper care; and damaged the property
and security, exclusive of the amount of gold taken out, to the
value of more than $100,000. Allege that the property has been
so handled by the defendants that it has deteriorated in value
until it is insufficient to pay the $60,000 remaining due. That
said corporation has never worked said property in a business-
like or workmanlike manner. That its officers and agents have
always been extravagant, and have mined the property so as to
waste as much gold as was taken out, etc. By hydraulic min-
ing have caused to be covered up rich gold-bearing ground, and
by mismanagement have placed the property in such condi-
tion, that it cannot now or hereafter be made to produce suf-
ficient gold to yield dividends enough to pay said claim of
$60,000. That at the time said corporation took possession of
said property its condition was perfect, and contained sufficient
gold to more than pay said $60,000 under the conditions of
Exhibit "B." That no part of said $60,000 or interest has ever

been paid. That the only way in which plaintiffs can now ob-
tain payment of said $60,000, or any part thereof, is by the
sale of said property. That the corporation, in the manner
hereinbefore set forth, has extracted said amount of gold, and
is making and has made over and above all expenses, large
amounts of money, but, owing to the fraud, deceit, and mis-
management of the officers, it has paid no dividends, or any-
thing to apply to the indebtedness due plaintiffs. Allege that
said officers falsely and fraudulently are enriching themselves
from the proceeds of the mines. That since March, 1896,
William M. Thomas has been the president and manager,
Blanche E. Thomas, vice-president, Mary F. Smith, secretary,
of the corporation. On information and belief allege that
Blanche E. Thomas and Mary F. Smith are sisters of William
M. Thomas; that Mary F. Smith is the wife of John Francis
Smith, the mortgagee, hereinbefore referred to. Then follows
an allegation of the execution and delivery of the promissory
note for $75,000 to itself, payable to the order of itself, and
assigned said note to said John Francis Smith, and on the
same date, by its officers, executed a deed to all the property,
purporting to be security for the payment of said note. That
said deed was recorded, and provides that it shall be the first
lien on said property. That on July 24, 1897, the corporation
executed a note for $3,000, payable to itself, and assigned said
note to said Smith, and at the same time executed a chattel
mortgage purporting to be security for the payment of said
note. That all these transactions on the part of the officers of
the corporation and John Francis Smith were for the purpose
of defrauding said Dalliba, his heirs and assigns, of the divi-
dends on the stock in the hands of said Antisdel. Also that
the lease of said property to said Winchell was on the part of
said corporation, in conjunction with other acts in this para-
graph, alleged for the same purpose. That on the eighteenth
day of July, 1892, said Dalliba for a valuable consideration, ex-
ecuted and delivered to P. S. Roundtree, of Chicago, Illinois,
a written assignment of the two-thirds of any cash, stock, or
any evidences of value which said Dalliba may receive as pay-
ment of said $60,000. That on July 18, 1892, said Roundtree,

in writing, for a valuable consideration, assigned and delivered to the firm of Ira S. Baker & Co., of Chicago, said assignment from Dalliba to him, and on the same day said Baker & Co., for value, etc., delivered to H. M. Pettingill a one-half interest therein. That on the 28th of February, 1896, Pettingill, for value, assigned his interest to Milton K. Young, and that said Young is now the owner and holder thereof. That the firm of Ira S. Baker & Co. was composed of Ira S. Baker and E. N. Fay. That Baker died June 7, 1893, and Fay died June 16, 1896. That no administration has been had on either estate. That their sole and only heirs, for a valuable consideration, assigned the interest of Baker & Co. to John Cutbirth, and that said Cutbirth is now the owner thereof. That plaintiff Antisdel, since April 16, 1894, has been the trustee mentioned and provide for in Exhibit "B." That he has at no time received any dividends on said stock. That John S. Thomas and William M. Thomas claim same interest in said property by reason of a lease executed by the corporation subsequent to the execution of Plaintiffs' Exhibit "A" and "B." That the defendant John Francis Smith claims same interest in said property by reason of the deed and chattel mortgage heretofore referred to, which are also subsequent to Plaintiffs' Exhibits "A" and "B." That none of said plaintiffs ever knew of said deed to Smith prior to July 15, 1898, and did not know of the terms and conditions thereof until March 14, 1900. That at all the times mentioned all the plaintiffs have resided without the state of Idaho. That the corporation is insolvent, and has never designated any person upon whom process may be served. That during a period of six months each year since 1893 said corporation has not had any of its officers, agents, or representatives within the state of Idaho. That said corporation has in no manner complied with the provisions of section 10, article 11, of the constitution of Idaho. That the state and county taxes for the years 1897, 1898, and 1899 are due and unpaid. That said property has been sold to the county of Bingham for the taxes due for 1897-98, and the county will be entitled to a deed in July, 1900, and the property and lien thereon of plaintiffs will be wholly lost. Then follows the prayer for judg-

ment: 1. That said sum of $60,000 and interest from July 18, 1892, is due, owing, and unpaid to plaintiffs; 2. That plaintiffs have judgment against the corporation for the sum of $60,000, with interest from July 18, 1892, at the rate of six per cent per annum; that said judgment be declared to be a first lien on all the property described in Exhibit "A"; that the usual decree may be made for the sale of said premises by the sheriff of said county; that the proceeds may be applied in payment to the amount due plaintiffs, and that defendant and all persons claiming under him, subsequent to the execution of said deed Exhibit "A," either as purchasers, encumbrancers, or otherwise, may be barred and foreclosed of all rights, or equity of redemption in said premises; and that plaintiffs may have judgment and execution for any deficiency which may remain after applying all the proceeds of the sale of the property applicable to the satisfaction of said judgment; that said note for $75,000 and the note for $3,000, executed by said corporation, and assigned by it to said John Francis Smith, and the deed and chattel mortgage purporting to secure the same, may be declared fraudulent and void, and no lien on the property described in Exhibit "A"; that the receiver heretofore appointed by the court remain in possession of all the property, and manage the same, etc.

Exhibit "A" referred to is an ordinary quitclaim deed dated July 16, 1892, from William S. Dalliba to Leonard C. Riggs, and contains this clause: "That the said party of the first part for and in consideration of the sum of $90,000, lawful money," etc., "to said party of the first part in hand paid by the said party of the second part, the receipt whereof is acknowledged, and for the further consideration of sixty thousand ($60,-000.00) dollars to be paid by the said party of the first part [evidently meaning of the second part] in accordance with the terms of a certain contract of even date herewith, executed by the said party of the second part for record in said Bingham county, has granted, bargained, sold, remised, released, conveyed, and quitclaimed," etc. Then follows the description of the property in detail. The deed is acknowledged and recorded in Bingham county, as shown by the record. The

contract referred to as Exhibit "B" in the complaint is as follows: "This agreement, made and entered into this sixteenth day of July, 1892, by and between William S. Dalliba, of the county of Bingham, and state of Idaho, party of the first part, and Leonard C. Riggs, of the county of Cook, state of Illinois, party of the second part, witnesseth: That whereas, the party of the first part has conveyed by a deed of even date herewith certain mining and other properties situated in the county of Bingham and state of Idaho, and has received as part consideration therefor the sum of $90,000: Therefore, it is agreed by the party of the second part that as a further consideration of the said property he will, on or before the thirty-first day of December in each and every year, pay one-half the net proceeds that he may derive from the workings of said properties, if any profit is made during the year, as above (if the expense of working during any year shall exceed the receipts of that year, the deficiency shall be charged to the following year or years, and be deducted from the receipts thereof) until such time as the sums so paid from the yearly profits shall amount to the sum of sixty thousand dollars ($60,000). And it is understood that the total salaries of the officers for managing the properties shall not exceed the sum of six thousand dollars ($6,000) per year in the aggregate as long as any portion of the sixty thousand dollars ($60,000) shall remain unpaid. Said second party, his heirs and assigns, shall at the close of each mining season, and not later than the twenty-first day of December of each and every year, until said sum of sixty thousand dollars ($60,000) shall have been paid, mail to and upon the demand of the said first party, his heirs and assigns, a sworn statement showing the gross yield, expenses, and profits of any of said property, and shall at the time of mailing such statement, or within ten days thereafter, forward to said first party, his heirs or assigns, one-half the sum of said yearly profits, if any, as hereinbefore provided. In the event that no profit is made, a sworn statement of that fact, verified by a competent person familiar with the operation of the property, will suffice, without setting forth the figures of operation. It is further agreed by said party of the second part that in the

event of his selling said described mining property (to any other than a corporation as hereinafter provided) before the sixty thousand dollars ($60,000) shall have been paid, he will pay unto the said party of the first part one-half the cash that he may from time to time receive on account of such sale (within thirty [30] days from receiving such, if any, cash payments), until said account so paid by said party of the first part shall equal whatever proportion of the $60,000 as shall remain unpaid, the term 'cash' and 'cash payments' shall include anything in the way of property, notes, mortgages, or any value or evidence of value received by said second party from said sale of said property; provided, however, that this shall not be construed to prevent said party of the second part from organizing a corporation and selling all of the property to which reference is herein made to said corporation, and receiving for same the entire capital stock of said corporation issued fully paid and nonassessable. But if a corporation is organized of such property, or any part thereof, the said party of the first part, his heirs or assigns, shall receive (in lieu of the said sixty thousand dollars [$60,000] as hereinbefore provided to be paid to the party of the first part, his heirs or assigns) one-third in stock fully paid as above, bonds, scrip debentures issued upon said property, and said stock, bonds, or other securities as above shall be issued to the president of some bank in the city of Chicago (to be named by said party of the first part) as trustee. Said stock to be fully paid as above. The interest or dividends declared or due upon said stock, bonds, or other securities from time to time shall be paid to said trustee for the use of said party of the first part, his heirs or assigns, until such payment shall in the aggregate amount to the sum of sixty thousand dollars ($60,000), less any amounts that may have been paid to the party of the first part, his heirs or assigns, before the corporation is formed. Whenever the amount of sixty thousand dollars ($60,000) shall have been paid, stock, bonds, or other securities delivered to the trustee herein mentioned shall become the absolute property of the corporation. The stock that may be delivered to the trustee as herein provided shall not be voted at any meeting of the corporation, the power of the

trustee under said stock or security being only to receive dividends or interest thereon as herein provided. In witness whereof the parties hereunto set their hands and seals this eighteenth day of July, A. D. 1892. [Signed] William S. Dalliba. [Signed] Leonard C. Riggs. Filed March 19, 1900." To this complaint the defendants demurred as follows: "Come now the defendants American Hydraulic Placer Company, a corporation, John S. Thomas, and William M. Thomas, and demur to the plaintiffs' second amended complaint filed herein upon the following grounds, to wit: 1. That said second amended complaint does not state facts sufficient to constitute a cause of action; 2. That the so-called cause of action set up in said second amended complaint does not state facts sufficient to constitute a cause of action; 3. That the so-called second cause of action set up in said second amended complaint does not constitute facts sufficient to constitute a cause of action; 4. Said second amended complaint is uncertain in the following respects, viz.: (a) The last clause of paragraph 5—i. e., 'and the terms of said deed and contract and the payments to be made,' etc., 'were and are a lien upon the said premises,' etc., is uncertain in that it does not appear how, or why, or in what respect or to what extent, the same became, was, or is a lien upon the premises referred to, or upon anything whatever, or whether the alleged lien was or is a lien created by contract or by operation of law, or upon what theory or in what manner there is or ever was any lien upon anything. For the same reasons, and in the same respects, said clause is ambiguous, and for the same reasons, and in the same respects, and upon the same grounds, is unintelligible. (b) In paragraph 5 of said second amended complaint it is wholly uncertain what is meant by the word 'lien,' or what lien is referred to, or was known at the time mentioned. (c) It does not clearly appear whether any interest or dividends ever have been declared upon, or earned by, or become or been due upon, the stock alleged to have been transferred to said Antisdel, trustee; nor does it appear that these defendants, or any or either of them, have ever been wrongfully refused to make, declare, or pay such dividends, or to appor-

tion any interest. Said second amended complaint is ambiguous for the same reason and upon the same grounds. Said pleading is unintelligible for the same reason and upon the same grounds. (d) It does not appear that the plaintiffs, or either or any of them, have ever made any effort by means of or through the organization of the defendant corporation itself to have corrected the abuses therein alleged against the stockholders and others having the control of and interest in the defendant corporation. (e) It is not clearly alleged what stockholders or who have been guilty of or perpetrated the fraud, deceit, or mismanagement alleged, or when, or where, or how, or in what respect. Said pleading is ambiguous for the same reason and upon the same grounds. (f) It does not clearly appear what part, if any, of the $60,000 referred to was paid prior to the transfer to the defendant corporation, or what amount, if anything, was due at the time of such transfer. (g) It does not appear how, or why, or upon what theory the plaintiffs are entitled to recover in this action upon the contract alleged. Said pleading is ambiguous for the same reason."

In order that we may have a fair understanding of the demands of the plaintiffs and the relief asked, we have set out all the important averments of the complaint, as well as the demurrer thereto. As we view the situation in this case, with our construction of the deed and contract made and entered into between plaintiff Dalliba and defendant Riggs, copies of which are attached to the plaintiffs' complaint, marked Exhibits "A" and "B," and made a part thereof, it is important to consider the demurrer of the defendants. It will be observed that the deed conveys all the interest in and to the mining property, together with all other property of the plaintiff Dalliba to said Riggs, subject to and conditioned upon a certain contract between said parties of the same date, which is a part of plaintiffs' complaint, referred to as Plaintiffs' Exhibit "B," and heretofore set out in full. By the terms of this contract it is shown that defendant Riggs was permitted to sell said property to any one to whom he saw fit, or by its terms he was permitted to and did organize a corporation. The obligation

of Riggs in case he organized a corporation was to execute and deliver to Dalliba or his heirs or assigns "one-third in stock fully paid as above, bonds, scrip debentures issued upon said property, and said stock, bonds, or other securities as above shall be issued to the president of some bank in the city of Chicago (to be named by the party of the first part), as trustee, said stock to be fully paid as above." The complaint shows that when said corporation was organized the stock above provided for was issued and placed in the hands of plaintiff Albert Antisdel as trustee for said Dalliba. With this showing by the complaint the question arises: What lien, if any, did plaintiff Dalliba have upon the property conveyed by him to Riggs as shown by the deed, which, by its own terms, is to be considered and construed with the contract? It is also shown by the complaint that at the time of the commencement of this action Dalliba was the owner of a one-third interest in the debt due. Plaintiff Young was the owner of a one-third interest, and plaintiff Cutbirth the remaining one-third. Counsel for appellant urges that plaintiff Dalliba has no lien of any kind upon the property that can be enforced in the manner attempted in this action, and under our code, if he had a lien, it is a personal one, and cannot be transferred; that Dalliba had secured himself with the thirty-three thousand four hundred shares of nonassessable stock, which was delivered to Antisdel, his trustee, as secretary, for the payment of the $60,000 provided for by the contract, and that he could have compelled frequent accounting and prevented waste. The contract says "that this shall not be construed to prevent said party of the second part from organizing a corporation and selling all of the property to which reference is herein made to said corporation, and receiving for same the entire capital stock of said corporation issued fully paid and nonassessable." If Dalliba had an equitable lien on all the property he sold to Riggs, did he forfeit his right to such lien by accepting the paid-up nonassessable stock? Courts will only construe contracts as they find them, and in this case we are called upon to construe the contract in connection with the quitclaim deed from Dalliba to Riggs. We are of the opinion

that, if Dalliba had an equitable lien by virtue of his quitclaim deed to Riggs, he forfeited his right to recover thereon. When he accepted the stock paid up and nonassessable, he took his chances on the output of the mine. That he accepted the stock as his security for the payment of the $60,000 due him we think is a fair and reasonable construction of the contract. The contract and sale is a very common one in mining countries. Dalliba had a large tract of placer mining ground for sale. Riggs bought it, paying $90,000 cash and agreeing to pay $60,-000 more when the gold was taken from the ground, over and above expenses. If the mines could not be worked profitably, Dalliba had his $90,000 and Riggs was taking the chances on the property earning the $90,000 already paid and the $60,000 due before there was anything for him. Dalliba was amply protected by the contract. If at any time there was mismanagement in the operation of the property, or dishonesty on the part of Riggs or his successors, a court of equity would aid him.

We have reviewed the authorities cited by respondent, but cannot agree with the contention that plaintiffs have any lien excepting such as Dalliba secured by the stock in the hands of Antisdel. By his contract he accepted this as his security. (See *Greenberg v. Rock Co.*, 107 Cal. 667, 40 Pac. 1053.)

The demurrer should have been sustained. The judgment is reversed, and remanded to the trial court for further proceedings in harmony with this opinion. Costs to appellant.

Quarles, C. J., and Sullivan, J., concur.

### ON REHEARING.

#### (January 20, 1902.)

SULLIVAN, J.—Upon a careful consideration of this case on rehearing, we conclude that the demurrer ought to have been overruled. An attempt was made to set up in the complaint an equitable lien, when the contract sued on clearly shows that the only lien the respondents have is upon the shares of stock deposited with Antisdel, trustee. The validity of the $75,000 trust deed or mortgage was put in issue by the

pleadings, and the record shows that the trial court erred in holding that said security was fraudulent and void. The record shows that Dalliba knew of the contemplated execution, and knew of the execution thereof and of the execution of the $3,000 mortgage on the personal property, and did not object thereto. It also shows that said securities were executed for the purpose of raising funds for the improvement and development of said mining claims; that one Roundtree, a confidant or friend of Dalliba, endeavored to sell said securities, and failed to do so, and reported to the Thomases that the amount was too large, and must be reduced to $50,000, which was done by indorsement of $25,000 on said $75,000 note and mortgage. Said Roundtree failed to make a sale thereof after said reduction, and thereafter Ella C. Thomas purchased the same for $37,000, and paid said sum to the officers of said company, and thereby became the owner thereof to the extent of $37,000. There is no conflict in the evidence upon that point. It is also shown that said money was expended upon said mining claims and in the payment of the corporation's debts. While there is some conflict in the testimony as to the value of the work done on the mining claims by the Thomases, we think the evidence of the plaintiffs upon that point is of such character as not to be of much weight. Under the contract set forth in the complaint the net profits arising from the working of the mines are required to be paid on the $60,000 of the purchase price remaining unpaid, and it is alleged in the complaint that large net profits have been realized to the extent of more than $40,-000 in the operation of said mines, which allegation is denied by the answer. The evidence fails to show that any net profits have been made in operating said mines. It follows that the judgment must be reversed on the ground that respondents have no lien upon said mining claims, and the decree of foreclosure must be reversed. We are of the opinion that said trust deed or mortgage is a valid subsisting lien on said mining claims and property to the extent of $37,000, with interest thereon as provided therein.

The cause is remanded for further proceedings in conformity with the views expressed in the original opinion herein as

modified by the views expressed herein.   Costs of this appeal
are awarded to appellants.

Quarles, C. J., and Stockslager, J., concur.