(August 16, 1905.)

## DALLIBA v. WINSCHELL, RECEIVER.

[82 Pac. 107.]

RECEIVERS—POWERS AND DUTIES OF RECEIVERS—RIGHT TO CARRY ON BUSINESS OF A PRIVATE CORPORATION—PRIOR LIEN FOR DEBTS CONTRACTED BY RECEIVER—AUTHORITY OF COURTS OF EQUITY TO DIRECT WORKING OF PLACER MINES—ATTORNEY FEES PAID BY RECEIVER.

1. A court of equity has no authority to direct its receiver in charge of placer mines to carry on a general mining business and

charge the expenses of the business and operations as a prior and preferred lien against the property over that of prior recorded mortgages and encumbrances on the same property.

2. A receiver in charge of the property of a corporation has no authority to carry on the business of the corporation unless he be so authorized and directed by the court.

3. Courts of equity have the power and authority to appoint receivers of property and direct them to care for, protect and preserve the property and decree the charges and expenses therefor as prior and preferred liens to that of all other liens, mortgages or encumbrances, and to direct the property sold for the payment of the same.

4. Where a receiver has failed to keep correct accounts of the business and transactions of the receivership estate, and has failed to take vouchers for numerous and large sums of expenditure and has made large overcharges and false charges for sums claimed to have been expended by him, and has been generally reckless in his expenditures in connection with the trust and in the employment of servants, and has shown a general disregard for the trust he has assumed, a court of equity will refuse to allow him any salary or compensation for services as receiver.

. 5. A receiver is not entitled to allowance for fees paid attorneys for making his reports, narrating his acts, receipts and expenditures as receiver and prosecuting claims against the estate he represents for his own compensation and for the allowance of such attorney fees.

6. ID.—In such case the service constitutes a part of the duties of the receiver, and the charge is a personal expenditure and should be borne by the receiver individually.

(Syllabus by the court.)

APPEAL from the District Court in and for Bingham County. Honorable Alfred Budge, Judge.

William Winschell, receiver, made his final report and account, to which exceptions were taken. A decree was entered settling the account and ordering the property sold to pay the amount found due the receiver. The American Hydraulic Company and other defendant appealed. Decree ordered modified.

F. S. Dietrich, for Appellants.

Smith on Receivers, at paragraph 355, in speaking of reports and accounts of receivers, says: "Being an officer of

court, a great degree of strictness is required of him, and the funds in his possession being trust funds, the utmost care must be exercised in reference to their disposition and his accountability therefor. A proper accounting from time to time, as well as his final report, renders it incumbent upon the receiver to carefully inventory the estate, property, goods and effect of every nature that come into his hands." (*McCulloch v. Tomkins,* 62 N. J. Eq. 262, 49 Atl. 475; *Mintz v. Brock,* 193 Pa. St. 294, 44 Atl. 417; 2 Perry on Trusts, sec. 821.) "A trustee is bound to keep clear, distinct and accurate accounts. If he does not, all presumptions are against him, and all obscurities are to be taken adversely to him." (*Gaston's Trust,* 35 N. J. Eq. 60.) If a trustee loses his accounts, he must bear any resulting damage. (*Welch v. Brown* (1893), 50 N. J. Eq. 387, 26 Atl. 568; *Dufford v. Smith,* 46 N. J. Eq. 216, 18 Atl. 1052; Smith on Receivers, 587; *In re Sheets Lumber Co.,* 52 La. Ann. 1337, 27 South. 809; Beach on Trusts and Trustees, sec. 737; *In re Hodges' Estate,* 66 Vt. 70, 44 Am. St. Rep. 820, 28 Atl. 663; *In re Thompson's Estate,* 101 Cal. 349, 35 Pac. 991.) A receiver cannot recover attorney's fees paid to his attorneys, who are also attorneys for one of the parties to the action. (Ency. of Law, 1069; Beach on Receivers, 1897 ed., p. 274; Smith on Receivers, par. 129, also par. 350; *Vieth v. Ress,* 60 Neb. 52, 82 N. W. 116; *Adams v. Woods,* 8 Cal. 306; *Farwell v. Great Western Tel. Co.,* 161 Ill. 522, 44 N. E. 891; *Sowles v. National Union Bank,* 82 Fed. 139; *Terry v. Martin,* 7 N. Mex. 54, 32 Pac. 157; *Wilkinson v. Washington Trust Co.,* 102 Fed. 28, 42 C. C. A. 140. See, also, 23 Ency. of Law, p. 1068; *Olson v. State Bank,* 72 Minn. 320, 75 N. W. 378.) Section 3318 of the Revised Statutes provides that a receiver may be appointed by a court or judge. Section 4333, prescribing the duties and defining the powers of a receiver, limits control of his conduct to the court, not the judge of the court. (*In re Bank of Genessee v. Denning,* 5 Idaho, 482, 51 Pac. 406; *Gaffney v. Piper,* 5 Idaho, 490, 51 Pac. 99.) The rule is not universal that even the expenses of preserving property by a receiver are chargeable against the property. (*Ephraim v. Bank,* 129 Cal. 589,

62 Pac. 177; *Frick v. Fritz,* 124 Iowa, 529, 100 N. W. 513; *French v. Gifford,* 31 Iowa, 428.) In appointing a receiver of a corporation not of *quasi* public character, the court has not the power, without the consent of the owners of prior liens, to authorize the receivers to contract debts in operating the business, which shall have priority over such prior liens. (*United States Inv. Co. v. Portland Hospital,* 40 Or. 523, 67 Pac. 194; *Hooper v. Central Trust Co.,* 81 Md. 559, 32 Atl. 505, 29 L. R. A. 262; *Farmers' Loan and Trust Co. v. Grape Creek Coal Co.,* 50 Fed. 481, 16 L. R. A. 603; *Hanna v. Trust Co.,* 70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201; *Belknap Sav. Bank v. Laconia Land & Canal Co.,* 28 Colo. 326, 64 Pac. 212; *Metropolitan Trust Co. v. Lake Cities R. R.,* 100 Fed. 897; 3 Cook on Corporations, sec. 876.)

Hawley, Puckett & Hawley, for Receiver, etc.

The rule as to the allowance of attorney's fees is well settled in California, and is to this effect: "The circumstances under which the allowance of attorney's fees was made not appearing in the record, therefore the court will presume that they were properly allowed, and error cannot be presumed or conjectured, but, on the contrary, every intendment is in favor of the regularity and correctness of the ruling of the court below, it having jurisdiction of the subject matter and parties." (*McLane v. Placerville etc. R. R. Co.,* 66 Cal. 625, 6 Pac. 748; *Trust Co. v. McClure,* 78 Fed. 209; *Trustees v. Greenough,* 105 U. S. 527, 26 L. ed. 1157; *Stewart v. Boulware,* 133 U. S. 78, 10 Sup. Ct. Rep. 242, 33 L. ed. 568.)

AILSHIE, J.—This is an appeal from an order and judgment settling and allowing a receiver's report and account. The record comes to us containing the receiver's amended petition and final report, findings and judgment of the court and a bill of exceptions. The action out of which this litigation arose was commenced in the district court of Bingham county in 1899. In that action a receiver was appointed to take charge of certain placer mining properties situated in the Carriboo mining district, Bingham county. W. H. Holden

was appointed receiver of the property and took possession thereof and continued to act until the spring of 1900, when he resigned and William Winschell was appointed and qualified and took possession. The action in which the receiver was originally appointed resulted in a judgment in favor of the plaintiffs, from which judgment the defendants appealed, and the judgment was reversed by this court, in *Dalliba v. Riggs,* 7 Idaho, 779, 67 Pac. 430. After the *remittitur* went down some misunderstanding seems to have arisen as to the extent of the judgment rendered on appeal, which resulted in an application to this court for a writ of mandate against the district judge of the fifth district, and in *American Hydraulic Placer Co. v. Rich,* 8 Idaho, 570, 69 Pac. 280, this court again considered the question and caused a writ to issue directing the district judge to dismiss the action. The case was accordingly dismissed and the receiver thereafter turned the property in his possession back to the defendants. No settlement of the receiver's account was made until the sixteenth day of March, 1905, when a decree was entered from which this appeal is prosecuted. The receiver's report is very voluminous and the findings of the court are somewhat lengthy covering the principal facts put in issue upon the settlement of the account. It appears that the property consisted of eight unpatented placer mining claims upon which it was necessary to have the annual assessment work done and upon which there were flumes and ditches requiring some attention as well as buildings and other fixtures that required care and preservation. During Winschell's receivership he not only cared for the property and did the assessment work, but it seems that he carried on active mining operation upon a large scale, "running a boarding-house" at which he boarded the workmen and a "commissary" from which he sold the miners rubber boots, slickers, clothing, tobacco, whisky and other miscellaneous articles. During this time Winschell was also operating a stage line from Soda Springs to a point near the mines in question; also running a saloon about thirty miles from the mines and a general merchandise store, besides being engaged in the

lumber business. The trial court, among other things, finds that: ''Said Winschell only in a few instances took receipts for money paid out; that many of his payments were made by check; that some of the checks produced and tendered as vouchers were signed 'William Winschell, Rec.,' others were signed 'William Winschell, R.,' others were signed 'William Winschell, P.,' and still others were signed simply 'William Winschell,' and no clear or satisfactory explanation was furnished as to why these various signatures were used, but there was some explanation by the receiver why said abbreviations were used. Many of the items of charge in said report and account were not supported by any receipts or checks or entries in books or other memoranda; and the balance were supported by checks, books or memoranda. . . . . Said receiver carried upon the pay-rolls of the receivership estate numerous members of his own family, including his wife and three children; one of whom at the age of fourteen years and another at the age of fifteen years he paid the same rate of wages as to grown men, in all of which cases the court reduced said claims. That no accurate accounts were kept of his dealings with members of his own family, and some credits for payments to them were claimed where there was no voucher or check or book entry supporting the same. That during one season he, as receiver, being unable to procure a cook, paid his wife regular wages as cook, and during the said time boarded his entire family at the expense of the estate, four of his children so supported not being in his employ as receiver, said children being from five to fifteen years of age, the oldest being a girl. That in the course of the hearing upon the account counsel for the receiver expressly conceded overcharges and erroneous charges aggregating over $1,800, and the court in addition to said items has disallowed many others as being erroneous or improper or false.''

It does not appear that the court ever made any order directing the receiver to work and operate these mines or do anything other than care for, preserve and protect the property. Debts were incurred on every hand without any order

of court therefor. On the twenty-fourth day of October, 1900, the receiver presented an unverified petition to the district judge setting forth that there was an indebtedness of some $3,100, and asking for an order authorizing him to borrow money for the purpose of paying such indebtedness, and thereupon the district judge, without notice to any other parties concerned or interested in the matter, made and issued his *ex parte* order directing the receiver to procure a loan of $2,500, bearing interest at ten per cent per annum for the purpose of defraying the indebtedness. At the same time it seems there was an indebtedness of $600 to one of the banks with which the receiver had been doing business, and the payment of which was not authorized by this order for a loan. In pursuance of the order so made the receiver procured a loan of $1,500 from one John C. Millick, and $1,000 from one John G. Brown. Thereafter, and on March 9, 1901, the receiver again presented to the district judge an unverified application for leave to borrow $1,000 for the purpose of operating the mines during the season of 1901, and thereupon the district judge made his *ex parte* order authorizing the securing of such a loan. In pursuance of such order the receiver borrowed the sum of $600 from John G. Brown and executed his note therefor, and thereafter and on April 12, 1901, the receiver borrowed the additional sum of $400 from Brown and executed his further note therefor. This furnishes only a brief insight into the reckless, careless and indifferent manner in which this receiver, an officer of the court, conducted the business and plunged the estate into debt. The court finds that during all this time there was a valid existing and unpaid mortgage on the entire property in favor of the defendant, John Francis Smith, for the sum of $37,000. The court, after scaling down these accounts a couple thousand dollars or more, finds that the estate is indebted to the receiver in the sum of $6,719.94, and decrees the same to be a prior and paramount lien to all other mortgages, liens and encumbrances, and orders the property sold to pay such indebtedness. The evidence not being before us, we are unable to ascertain the nature or character of the indebtedness for

which these sums of money were borrowed.   Neither can we
gather, with any degree of accuracy from this record the ex-
penditures that were actually necessary in protecting and pre-
serving the property and doing the assessment work.   Of
course, we know it was necessary to do $800 worth of assess-
ment work annually, and it must be true that other expen-
ditures were necessary in protecting and caring for the prop-
erty, but as to the amount or extent thereof we have no means
of information.   It does appear, however, from the findings
that Winschell had previously worked and operated the mines
at a net profit of about $4,000 per annum, and that he
had also offered Holden, the receiver who had previously
had charge of the property, that he would furnish all sup-
plies and do the assessment work and pay the taxes for the
proceeds which he might derive from working and operating
the mines.   It is therefore difficult to understand where the
amount of these loans could have been expended except in a
general working and operating of the mines.   It is clear to
us, however, that a court of equity has no authority to place
its receiver in charge of such property and operate the same,
carrying on a general mining business, and when it turns out
to be at a loss, as is likely to be the result in such cases,
charge the same up as a preferred claim and lien against
the property to the prejudice and loss of the holders of prior
recorded liens on the same property.   (*United States Inv.
Corp. v. Portland Hospital,* 40 Or. 523, 67 Pac. 194, 56 L.
R. A. 627; *Hooper v. Central Trust Co.,* 81 Md. 559, 32 Atl.
505, 29 L. R. A. 262; *Farmers' Loan etc. Co. v. Grape Creek
Coal Co.,* 50 Fed. 481, 16 L. R. A. 603; *Hanna v. Trust Co.,*
70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201; *Belknap Sav.
Bank v. Lamar Land etc. Co.,* 28 Colo. 326, 64 Pac. 212;
*Terry v. Martin,* 7 N. Mex. 54, 32 Pac. 157; *Vilas v. Page,*
106 N. Y. 439, 13 N. E. 743; 23 Ency. of Law, 2d ed., 1068.)
This class of property is not like railroads and the prop-
erty of other common carriers and quasi public corporations,
the business and engagements of which must be carried on at
all times, even if it be by the officer of the court.   "This
is done," says Judge Gresham in *Farmers' Loan etc. Co. v.*

*Grape Creek Coal Co., supra,* "on account of the peculiar character of the property. It is generally mortgaged to secure bonds, and persons who invest in such securities know that the mortgage rests upon property previously impressed with a public duty. Private corporations owe no duty to the public, and their continued operation is not a matter of public concern. It is only against railroad mortgages that the supreme court of the United States has sustained orders giving priority to receivers' certificates representing particular indebtedness, and, as already stated, it is only on principles having no application to a mortgage executed by a private corporation owing no duty to the public." (*Hooper v. Central Trust Co.,* 81 Md. 559, 32 Atl. 505, 29 L. R. A. 262; *Kneeland v. Trust Co.,* 136 U. S. 89, 10 Sup. Ct. Rep. 950, 34 L. ed. 379; 3 Cook on Corporations, 5th ed., secs. 876, 877.) There is no question but that a court of equity has the power and authority in a proper case to appoint a receiver to take charge of property and to care for and protect the same and decree the charges therefor as a prior claim and lien against the propety paramount to all mortgages or other liens or encumbrances. But for the court to go beyond the protection and preservation of an ordinary placer mine and assume to enter into mining operations and the running and conducting of a mine, as appears to have been done by the receiver in this case, is outside of the line of duty of courts of equity and of their receivers, and this excessive exercise of jurisdiction becomes dangerous when indebtedness thus incurred supplants prior existing mortgages and obligations upon the property. The findings in this case show conclusively that the receiver did not keep anything like accurate accounts; that he did not take vouchers for his expenditures; that he was extravagant to the verge of recklessness in the employment of help and servants about the property, and that when he came to filing his account he made many charges against the estate where no charge whatever should have been made and none in fact existed. This case appears to us as presenting the most glaring and flagrant abuse of the office of a receiver, and under the plainest pre-

cepts of justice and equity he should be allowed no compensation whatever for his time or services rendered in connection with this estate.    (See Smith on Receiverships, p. 587; *Welsh v. Brown,* 50 N. J. Eq. 387, 26 Atl. 568; 2 Perry on Trusts, sec. 821; *In re Gaston Trust,* 35 N. J. Eq. 60.)   We are further satisfied that the receiver is not entitled to any allowance for attorney's fees.    That charge must be borne by him individually and out of his private estate.    He has never at any time, so far as it appears from this record, been authorized to employ an attorney in the administration of his office, nor does it appear that he has ever had occasion for an attorney other than in presenting this account and securing an order and judgment allowing the same, and for such services the estate should not be charged.   He should not be allowed to bring extraordinary and exhorbitant claims and charges against the estate and then be allowed attorney's fees out of the estate for prosecuting those claims to final judgment against the estate he has been representing.    In *Wilkinson v. Washington Trust Co.,* 102 Fed. 28, 42 C. C. A. 140, paragraph 1 of the syllabus says: ''A receiver is not entitled to an allowance for disbursements to attorneys for making reports to the court involving nothing more than a simple narrative of his acts, and on account of his receipts and disbursements.''   (*Henry v. Henry,* 103 Ala. 582, 15 South. 916; *Gunn v. Ewan,* 93 Fed. 80, 35 C. C. A. 213; *Olson v. State Bank,* 72 Minn. 320, 75 N. W. 378; *Sowles v. National Union Bank,* 82 Fed. 139; *Terry v. Martin,* 7 N. Mex. 54, 32 Pac. 157.)

As hereinbefore observed, we are not in a position (not having the evidence before us) to say that the loans secured by the receiver under order of the court should be disallowed. While such orders should not be made by the judge on *ex parte* application (*Gaffney v. Piper,* 5 Idaho, 490, 51 Pac. 99) and, indeed, may have been entirely without authority (a question which we do not here decide), still, these orders were such as to induce the belief in the average person that they were valid and legal, and emanating from the proper tribunal were undoubtedly looked upon by the lenders of

these sums of money as ample protection for their loans. With the findings before us as they are, we must affirm that part of the judgment which allows and orders paid the sums of money borrowed by the receiver under these orders and directions of the trial judge.  On the other hand, we shall reverse that portion of the judgment allowing the receiver $2,666 as salary or compensation for his services as receiver, and also that part of the judgment allowing the sum of $575, as fees to the receiver's attorneys.  The cause will be remanded to the trial court, with instructions that the judgment be modified as herein indicated.  Costs awarded to appellants.

Stockslager, C. J., and Sullivan, J., concur.