(September 26, 1911.)

HENRY HEWITT, Jr., Appellant, v. THE GREAT WESTERN BEET SUGAR COMPANY, a Corporation, et al., Respondents.

[118 Pac. 296.]

BILL OF EXCEPTIONS—CERTIFICATE OF JUDGE—WATER RIGHTS—PRIORITY OF MORTGAGE—SUFFICIENCY OF EVIDENCE—RECEIVER'S CERTIFICATE —PRIORITY.

(Syllabus by the court.)

1. Where a bill of exceptions contains a certificate of the trial judge that the same is settled "as a true bill of exceptions in this case," such certificate is not sufficient to show that it contains all the evidence introduced at the trial or all of the evidence introduced at the trial upon the particular question involved.

2. Where there is a controversy between a mortgagee who holds a mortgage upon an irrigation canal or system and purchasers of water rights from such irrigation canal or system, as to whether the water rights and water contracts executed by the company after the making of such mortgage are affected by the mortgage or the foreclosure of the same, this court will not reverse the ruling of the trial court in admitting such water rights and contracts in evidence, where the record fails to present to this court such water rights and water contracts for review.

3. Sec. 3292, Rev. Codes, provides that when payment is made upon a perpetual water right, the water right shall remain a part of the tract of land for which the same is purchased, and that the title to the use of said water can never be affected in any way by any subsequent transfer of the canal or ditch company, or by any subsequent foreclosure of any bond, mortgage or other lien.

4. Sec. 3292 of the Rev. Codes was intended to apply to such water rights as are described in sec. 4, art. 15 of the constitution; that is, a water right only where there has been an actual application of the water to the land for a beneficial use.

5. Whenever a water right, as defined by the constitution, is required under the provisions of Rev. Codes, sec. 3292, the owner of the tract of land where the water is applied, his heirs or assigns, shall forever be entitled to the use of the water necessary to properly irrigate the same, by complying with such reasonable regulations as may be agreed upon or as may from time to time be

imposed by law, and the payment for such water right shall be a release of any bond or mortgage upon the property of the company from whom such water right is acquired, or their successors or assigns, to the amount of the water right purchased and paid for; and it is the duty of the company from whom the water right is purchased to furnish the purchaser, or his assigns, a release from said mortgage, so far as the same affects said water right. By the transfer, provided by the statute, the water right became attached to the particular tract of land upon which it is used.

6. Under the provisions of sec. 4329 of the Rev. Codes, the court has the power and authority in a proper case to appoint a receiver to take charge of property and to care for and protect the same and decree the charges therefor as a prior claim and lien against the property, paramount to all mortgages or other liens or encumbrances.

7. Whereas in this case upon foreclosure of a mortgage upon property of an irrigation or canal company the mortgagee has full opportunity to contest an order made by the trial judge in the case allowing such receiver's certificates as a prior lien to the mortgage, and fails to object or show any reason why such receiver's certificates should not be allowed, and the record fails to disclose that the appellant took any steps to contest such certificates as prior liens, and in no way put their priority in issue, this court will not disturb the finding of the trial court in allowing such receiver's certificates as prior liens against such property.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

An action to foreclose a mortgage. Cross-complaints filed. Judgment foreclosing mortgage and finding priorities for cross-complainants. Judgment *affirmed.*

Richards & Haga, for Appellant.

Findings must rest exclusively on the proceedings had in the case in which such findings are made, and not on the proceedings had in an independent action to which the persons whose rights are affected were not parties. (*Laughlin v. U. S. S. Co.,* 64 Fed. 25; *Union Trust Co. v. Ill. M. Ry. Co.,* 117 U. S. 434, 6 Sup. Ct. 809, 29 L. ed. 963.)

We contend that the plaintiff had never had his day in court, so far as the priority of the amount of these receiver's receipts is concerned.   (*Bibber-White Co. v. White River etc. Co.*, 115 Fed. 786, 53 C. C. A. 282; *Farmers' L. & T. Co. v. Centralia & C. R. Co.*, 96 Fed. 636, 37 C. C. A. 528; *Ferry v. Miltimore etc. Co.*, 71 Vt. 457, 76 Am. St. 787, 45 Atl. 1035.)

"A court of equity has no authority to place its receiver in charge of such property and operate the same, carrying on a general mining business, and when it turns out to be at a loss, as is likely to be the result in such cases, charge the same up as a preferred claim and lien against the property to the prejudice and loss of the holders of prior recorded liens on the same property."   (*Dalliba v. Winschell*, 11 Ida. 364, 114 Am. St. 267, 82 Pac. 107.)

That the rule as applied to railroad cases has no application to private corporations seems well settled.   (*Fidelity Ins. & S. D. Co. v. Shenandoah I. Co.*, 42 Fed. 372; *Snively v. Loomis Coal Co.*, 69 Fed. 204; *Merriam v. Victory Mining Co.*, 37 Or. 321, 56 Pac. 75, 58 Pac. 37, 60 Pac. 997; *U. S. I. N. V. Corporation v. Portland Hospital*, 40 Or. 523, 64 Pac. 644, 67 Pac. 194, 56 L. R. A. 627; *Baltimore B. & L. Assn. v. Alderson*, 90 Fed. 142, 32 C. C. A. 542; *Doe v. N. W. C. & T. Co.*, 78 Fed. 62; *Farmers' L. & T. Co. v. Grape C. C. Co.*, 50 Fed. 481, 16 L. R. A. 603.)

Sullivan & Sullivan, for Respondent.

A receiver of a canal system, under orders of court, can issue certificates for the care, preservation and maintenance thereof, that will be prior liens to all other liens.   (*Dalliba v. Winschell*, 11 Ida. 364, 114 Am. St. 267, 82 Pac. 107.)

Water companies and canal companies are of a similar public nature, and in this respect treated the same as railroads, as *quasi*-public corporations.   (High on Receivers, 4th ed., sec. 312-b; *Atlantic Tr. Co. v. W. C. & Irrigation Co.*, 79 Fed. 39–42; *Ellis v. V. I. L. & W. Co.*, 86 Tex. 109, 23 S. W. 858; *Jerome v. McCarter*, 94 U. S. 734, 24 L. ed. 136; 17 Ency. P. & P. 749; Insolvent & Failing Corps. (Jones), sec. 547; *Price v. Irrigation Co.*, 56 Cal. 431; *Merrill v. S. Irr. Co.*, 112 Cal.

430, 44 Pac. 720; 7 Am. & Eng. Ency. of Law, 638; 3 Cook on Corp., sec. 932; *Wiggins v. Neversink L. & P. Co.*, 47 Misc. 315, 93 N. Y. Supp. 853, *Hooper v. C. T. Co.*, 81 Md. 559, 32 Atl. 505, 29 L. R. A. 262; *McKenzie v. Bismark Water Co.*, 6 N. D. 361, 71 N. W. 608.)

Most of those authorities which hold the strongest against permitting expenses for the carrying on of a business to be made prior liens admit that such part of the expenses as were for the care and preservation of the property can be made prior to mortgages and other liens. (*Raht v. Attrill*, 106 N. Y. 423, 60 Am. Rep. 456, 13 N. E. 282; *International Tr. Co. v. Decker Bros.*, 152 Fed. 85, 81 C. C. A. 302, 11 L. R. A., N. S., 152; *International Tr. Co. v. United Coal Co.*, 27 Colo. 246, 83 Am. St. 59, 60 Pac. 621; *Hanna v. Tr. Co.*, 70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201; High on Receivers, 4th ed., sec. 312-b; Insolvent and F. Corp. (Jones), sec. 548.)

J. G. Watts, for Respondent John F. Schoneke.

Knowing its object and giving his consent to its continuance as a going concern, the purchaser under foreclosure assumes the burdens placed upon the franchise and property by the mortgagor. (Wiel on Waters, 2d ed., p. 336; *Stocker v. Nehama County*, 72 Neb. 255, 100 N. W. 308.)

Wyman & Wyman, for Respondent Stoetzel.

"Where a water company is under mortgage which is afterward foreclosed, the purchaser at the foreclosure sale will usually contend that he is not bound by water right contracts made subsequent to the mortgage; but were this true, contracts for water supply would be of little security to the consumer and the courts hold the purchaser is bound by them." (Wiel on Waters, p. 336.)

The law is clear that where a mortgagee knows of the existence of any instrument or conveyance affecting the title to the property on which he is about to take a mortgage, he is placed upon notice and fails to make suitable inquiry at his peril. (27 Cyc. 1201, 1202.)

Cavanah & Blake, for Respondents Smith, Moyses and Sherman.

There is no duty imposed upon the purchaser of a water right relative to the release of the mortgage, as that matter is left entirely with the vendor of such water right and mortgagee. (Wiel on Waters, p. 336.)

STEWART, C. J.—On the 30th day of January, 1907, the Great Western Beet Sugar Company, a corporation organized and incorporated under the laws of the state of Washington, executed to the appellant a mortgage to secure the payment of the sum of $80,000, represented by various promissory notes. The mortgage covered reservoirs, ditches, canals, water rights and a large volume of property constituting an irrigation system owned by the Great Western Beet Sugar Company, and situated in Elmore county, state of Idaho.

This action was brought for the purpose of foreclosing said mortgage. The Great Western Beet Sugar Company, the mortgagor, and a large number of other parties, consisting of persons and corporations claiming judgments and liens, mechanics' liens, laborers' liens, and persons who had purchased and contracted for water rights from the Great Western Beet Sugar Company, were made defendants. The Great Western Beet Sugar Company made no answer to the complaint. A large number of the other defendants filed answer to the complaint and a cross-complaint asking for the foreclosure of their said liens, and alleging that such liens were superior and a prior lien to that of the plaintiff's mortgage.

The case was tried and the trial court made certain findings of fact, among which were that the plaintiff was entitled to recover and have his mortgage foreclosed against the property described; finding No. 9 that the Great Western Beet Sugar Company sold and conveyed certain water rights to defendants answering in the case for the respective number of acres and giving the date of such conveyances; findings were also made in favor of the defendants, lienholders, second mort-

gagees, and judgment creditors, upon their cross-complaints, and that such liens were liens upon the property, and that they should be foreclosed; that "as collateral security and in addition to the security of the mortgage sought to be foreclosed, the defendant, the Great Western Beet Sugar Company, turned over to the plaintiff, Henry Hewitt, Jr., certain promissory notes of the respective dates and for the respective amounts, and given by the respective persons set forth in exhibit '10' of the said plaintiff, Henry Hewitt, Jr., introduced in evidence on the trial of the cause"; and finding No. 149, "That on the 18th day of March, 1909, this court made an order appointing Norman Isachson receiver in that certain action pending in the district court of the fourth judicial district of the state of Idaho in and for Elmore county, wherein the Idaho Fruit Lands Co., Limited, was plaintiff, and the Great Western Beet Sugar Company and the Elmore County Irrigation Farms Association were defendants, for the care, preservation, protection and repair of the same property which is in issue in the case at bar, known as the canal system of the Great Western Beet Sugar Company; and in the same order, and also in the supplemental order dated April 15th, 1909, in the same cause, directed and authorized said receiver to issue receiver's certificates to pay the necessary expenses for the maintenance, repair and protection of said property; and on the 28th day of October, 1909, said receiver filed his final account, showing that he had issued certificates in the sum of $17,675, and said account was, without objection, after due notice to all parties, approved, settled and allowed by this court, and said receiver thereupon discharged. This court, in said orders authorizing the issuance of said certificates, made the same a first and prior lien on all the property in his charge, and being the same property in issue here and superior to all mortgages, judgments, liens and other encumbrances existing against the same."

As conclusions of law the court found: Conclusion of Law No. 3: "That upon compliance with the terms under which the water rights set forth in Finding No. 9 hereof were sold and conveyed to the purchasers thereof, according to their re-

spective contracts of purchase, such water rights shall be held by such purchasers free from and unaffected by these proceedings and the decree rendered herein''; and Conclusion of Law No. 35: ''That all of the receiver's certificates issued by said Norman Isachson, receiver, in said action of the Idaho Fruit Lands Company, Limited, against the Great Western Beet Sugar Company et al., are first liens and have priority over all other liens herein decreed, and shall be first paid before any of the same out of the proceeds of sale of the property herein involved.''

Upon the foregoing, and other findings not important to consider, the court rendered a decree foreclosing the plaintiff's mortgage and the various liens plead by the answers of the defendants and cross-complainants appearing in said case, and adjudged that the receiver's receipts described in Finding No. 149 be first paid, and that thereafter lienholders and creditors should be paid, after which the mortgage of the plaintiff should be paid out of the proceeds of the sale of the mortgaged property. A motion for a new trial was made and overruled and this appeal is from the judgment and from the order overruling the motion for a new trial.

Counsel for appellant first contends that all water rights, water deeds and contracts made by the Great Western Beet Sugar Company subsequent to the 30th day of January, 1907, the date appellant's mortgage was given, whether the purchase price therefor was paid or was not paid, were subject to the lien of the appellant's mortgage, and that the court erred in admitting such deeds and contracts in evidence, and erred in his Conclusion of Law No. 3, ''that such water rights should be held by such purchasers free from and unaffected by the foreclosure proceedings.''

There is printed in the transcript a bill of exceptions which recites in substance that counsel for the defendants, over the objection of counsel for the appellant, were permitted by the court to introduce the following evidence for the purpose of proving that the defendants were entitled to water from the irrigation system of the defendant, the Great Western Beet Sugar Company, and that the water rights acquired as here-

inafter set forth were unaffected by the plaintiff's mortgage and by the mortgages and liens of the several defendants, and would not be affected by the decree foreclosing such mortgages and liens, to the introduction of which said evidence, and to each offer to introduce such evidence, counsel for plaintiff duly objected on the ground that the same was incompetent, irrelevant and immaterial, which objections were overruled by the court, to which counsel for plaintiff objected. Then follows a description of such deeds and contracts, some of which describe the land by legal subdivisions, and in many of which no descriptions whatever of the land are given. As a sample we give the following:

"1. Deed, to Ansel R. Braden, dated October 18th, 1907, recorded October 25th, 1907, for water rights for the NW. ¼ of the NE. ¼ and the NE. ¼ of the NW. ¼ of Section 26, Township 4 South, Range 6 East, B. M., transferred by said grantee under quit claim deed, dated October 20th, 1909, to the defendant, Charles B. Smith.

"3. Deed to Charles B. Smith, dated June 15th, 1908, for water right for 160 acres of land, land not described in deed, but it is therein stated that the water shall be applicable to any land under the present or proposed system of said Company. Deed not recorded and water not applied to any specific tract of land.

"19. Deed to Charles L. Sawyer dated November 20th, 1907, recorded December 14th, 1907, for water right for 40 acres.

"76. Contract to Flora E. Lawrence dated October 22d, 1907, for 80 acres.

"83. Contract to F. A. Dunsmoor dated May 14th, 1907, for water right for 80 acres."

These are samples of the statement in the bill of exceptions as to the evidence. This bill of exceptions is certified to by the trial court as follows:

"It is ordered that said proposed Bill of Exceptions heretofore filed by plaintiff in this cause as the same now stands amended and engrossed, be and it hereby is settled as the true Bill of Exceptions in this cause, and that the same as so settled be now and here certified accordingly by the undersigned,

the Judge of this Court, who presided at the trial of this cause, and that said Bill of Exceptions, when so certified, be filed by the Clerk and made a part of the record of said cause.

"EDWARD A. WALTERS,

"Judge."

This certificate does not show that it contains all of the evidence introduced at the trial, or all of the evidence introduced at the trial upon the particular question, neither is there a stipulation between counsel that such bill of exceptions contains the evidence necessary and proper to be considered in connection with the determination of the particular question such testimony related to, or necessary and proper to determine such question.

The trial court permitted the water deeds and water contracts to be introduced in evidence and overruled the objection of counsel for the appellant. These various water rights were plead in the cross-complaints of the defendants, who were purchasers and grantees of purchasers from the Great Western Beet Sugar Company, and were alleged to be rights paramount to and unaffected by the appellant's mortgage, and it was proper for the defendants to introduce the deeds and water contracts in support of such allegations. Whether such deeds and contracts established, or tended to establish, such cross-complaints, and were proof that the rights acquired thereby were paramount to and unaffected by the appellant's mortgage, was a question for the court to determine, and this question might have depended largely upon the language used in such deeds and contracts. It may have been that there was a provision in these deeds and contracts which exempted the water rights thus conveyed, or agreed to be conveyed, from the operation of the mortgage, and it may have been that the articles of incorporation of the Great Western Beet Sugar Company provided that the deeds and water rights issued by such company should convey rights and interests which could in no way be affected or encumbered by a mortgage given by the Great Western Beet Sugar Company, and inasmuch as deeds and contracts were made by the Great Western Beet

Sugar Company prior to the giving of the mortgage, if the terms of the deeds and contracts given after the mortgage were the same as those given prior to the mortgage, the terms may have given information to the mortgagee, the appellant herein, of the nature and character of such deeds and contracts. It may have been that the articles of incorporation of the Great Western Beet Sugar Company fully provided for the making of deeds and contracts by the company which would in no way be affected by, or in any way encumbered by, a mortgage given upon the property of the company.

It also appears from the record that the court made a finding "That as collateral security, and in addition to the security offered by the said mortgage hereby sought to be foreclosed in these proceedings, the said defendant, the Great Western Beet Sugar Company, turned over to the said plaintiff, Henry Hewitt, Jr., certain promissory notes of the respective dates and for the respective amounts and given by the respective persons set forth in Exhibit '10' of the said plaintiff, Henry Hewitt, Jr., introduced in evidence on the trial of this cause." Who gave these notes or for what they were given does not clearly appear from the record; the inference may be drawn that these notes were given by the several purchasers of water rights in payment of water rights purchased from the Great Western Beet Sugar Company, and were turned over by the Great Western Beet Sugar Company to the appellant as collateral security to the mortgage. If these facts be true, they very strongly indicate that the appellant knew that the Great Western Beet Sugar Company was engaged in selling water rights, and agreed to such sales, and agreed that such notes should be taken in payment for such sales and accepted the same as collateral security for the mortgage indebtedness, and such facts may have had great weight with the trial court in determining the question whether such water rights were unaffected by the mortgage or in any way impaired by the foreclosure proceedings. In the absence of the deeds and contracts, we cannot say that the trial court erred in admitting such deeds and contracts in

evidence.  The evidence may have presented a state of facts which was sufficient to fully authorize the court in concluding as a proposition of law that the water rights held by the defendants were unaffected by the foreclosure proceedings and the decree rendered in said cause.

When the appellant accepted the mortgage sought to be foreclosed, he did so with a full knowledge that the laws of the state became a part of the mortgage, and that his rights under the mortgage were limited and controlled by the provisions of the statute in relation to mortgages upon canal and ditch property.  Rev. Codes, sec. 3292, provides:

"When any payment is made under the terms of a contract, by means of which payment a perpetual right to the use of water necessary to irrigate a certain tract of land is secured, said water right shall forever remain a part of said tract of land, and the title to the use of said water can never be affected in any way by any subsequent transfer of the canal or ditch property or by any foreclosure or any bond, mortgage or other lien thereon; but the owner of said tract of land, his heirs or assigns, shall forever be entitled to the use of the water necessary to properly irrigate the same, by complying with such reasonable regulations as may be agreed upon, or as may from time to time be imposed by law.  And said payment for said water right shall be a release of any bond or mortgage upon the canal property of the person or company from whom such right is purchased or their successors or assigns, to the amount of such water right thus purchased, and paid for, and said person or company from whom such water right is purchased shall furnish to the party or parties purchasing such right a release, or a good and sufficient bond for a release, from said mortgage or bonded indebtedness to the amount of the water right thus purchased."

This statute became a law of this state on March 7, 1895, and was the law of this state at the time appellant accepted the mortgage involved in this case, and became a part of his mortgage.  This section is plain, and clearly provides that when payment is made upon a perpetual water right, the water right shall remain a part of the tract of land for which

the same is purchased, and that the title to the use of said water can never be affected in any way by any subsequent transfer of the canal or ditch company, or by any subsequent foreclosure of any bond, mortgage or other lien. This section was enacted for the protection of the purchaser of water rights purchased from an irrigation system or canal company engaged in the diversion and transmission for use of the public waters of the state. The section is supplemental to sec. 4, art. 15 of the constitution: "Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented or distributed to any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors, or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law."

The statute in plain language provides that the title to the use of water acquired, when payment is made under the terms of a contract, by means of which payment a perpetual right to the use of water necessary to irrigate a certain tract of land is secured, can never be affected by any subsequent transfer of the canal or ditch property, or by any subsequent foreclosure of any bond, mortgage or other lien thereon, and this section, read in connection with sec. 4, art. 15 of the constitution, clearly shows that the legislature intended this section to apply to the water right described in said sec. 4, art. 15 of the constitution; that is, a water right only where there has been an actual application of the water to the land for a beneficial use.

Whenever a water right, as defined by the constitution, is acquired under the provisions of this statute, the owner of

the tract of land where the water is applied, his heirs or his assigns, shall forever be entitled to the use of the water necessary to properly irrigate the same, by complying with such reasonable regulations as may be agreed upon or as may from time to time be imposed by law. And the payment for such water right shall be a release of any bond or mortgage upon the property of the company from whom such water right is acquired, or their successors or assigns, to the amount of the water right purchased and paid for; and it is the duty of the company from whom the water right is purchased to furnish the purchaser, or his assigns, a release from said mortgage, so far as the same affects the said water right. In other words, upon the purchase and payment of a permanent water right such water right thereafter is in no way affected by the lien of any mortgage given by the company from whom such water right is purchased, or by any foreclosure of any such mortgage, whether given before or after the sale of such water right, as provided for in sec. 3296, Rev. Codes. By the transfer as provided by the statute the water right became detached from the canal and became attached to a particular tract of land. If, therefore, in the present case, the water rights plead by the defendants were acquired in the manner provided by sec. 3292 of the Rev. Codes, and if they were of the kind referred to in sec. 4, art. 15 of the constitution, that is, a water right only where there has been an actual application of the water to the land for a beneficial use, then the court was right in finding as a conclusion of law that such water rights held by such purchasers were free from and unencumbered by the foreclosure proceedings, and as the evidence upon which such conclusion is based is not presented to this court for review, we cannot say that the court erred in its finding.

It is next contended by the appellant that the court erred in Finding of Fact No. 149 and Conclusion of Law No. 35 as referred to in this opinion. It is argued upon behalf of appellant that Finding No. 149 is not a finding in this case, but a finding that the court did certain things in another case in which the appellant was not a party. It is true that this

finding is somewhat uncertain, and does not show whether
the appellant herein was a party in fact in the proceedings
in which such receiver was appointed and the receiver's
certificates were issued. A careful examination of Finding
No. 149, however, convinces us that the court intended to
find that in a certain action a receiver was appointed by the
court for the purpose of caring for and preserving the
property involved in this foreclosure proceeding, and that
such receiver was directed and authorized to issue certificates
to pay the expenses of the maintenance, repair and protection
of said property, and that the receiver made a final account,
and that the receiver issued certificates in the sum of $17,675,
and that such account, after due notice to all parties, was
settled and allowed; and that the court made an order that
such certificates were a first and prior lien on all the property
in his charge as such receiver, being the same property covered·
by the mortgages, liens and encumbrances existing against
the same; and in this case and from this finding the court
concludes in Conclusion of Law No. 35, that such receiver's
certificates are a first lien and· have priority over all other
liens herein decreed, and shall be first paid out of the proceeds
of the sale of the property involved.

That the court had power and authority to appoint a
receiver of the property of the Great Western Beet Sugar
Company and for its care, preservation and protection, when
proper facts authorizing the same were presented to the court,
there can be no question, and such appointment is not con-
tested in this case. (Rev. Codes, sec. 4329.) The appellant,
however, claims that the priority given to the certificates
issued by the receiver should not have been allowed in this
case, as a prior lien against the mortgaged property, and
that appellant had had no opportunity to contest such
allowance. Whether the appellant was a party to the suit in
which such receiver was appointed does not clearly appear
from the finding, but there can be no question but that in
the present suit the appellant had full opportunity, if he saw
fit, to contest such receiver's certificates, and have litigated
and determined by the trial court in the present suit the

question as to whether such certificates should have been allowed. And there is nothing in the record to show that the appellant, at any time during the trial, made any contest or presented any matter to the trial court, or gave any reason why the court should not allow such certificates and make them a prior lien upon the mortgaged property. Certainly, when the question came before the trial court in the present case the appellant had his day in court, and could have contested these certificates and their priority, and fully litigated and offered such proof as he had, and given such reasons as existed in the law why the court should not allow the same; but the record does not disclose that the appellant took any steps to contest these liens or in any way put in issue their priority. In the case of *Dalliba v. Winschell,* 11 Ida. 364, 114 Am. St. 267, 82 Pac. 107, this court said: "That a court of equity has the power and authority in a proper case to appoint a receiver to take charge of the property and to care for and protect the same, and decree the charges therefor as a prior claim and lien against the property, paramount to all mortgages or other liens or encumbrances." Many other authorities might be cited in support of this proposition, but this case announces the law fully in this state on that subject.

For these reasons we think the trial court did not err in allowing such certificates and making such certificates prior liens. The judgment is *affirmed.* Costs awarded to respondents.

Ailshie and Sullivan, JJ., concur.