FOSTER G. REXROAD *v.* MONONGAHELA WEST PENN PUBLIC
SERVICE COMPANY

(No. 9026)

Submitted May 7, 1940.   Decided June 4, 1940

*Meredith & Bell,* for plaintiff in error.

*J. Harper Meredith* and *Harry Shaw,* for defendant in error.

HATCHER, JUDGE:

Plaintiff recovered a judgment of $30,000.00 for personal injuries. He was in a stationary automobile which was struck from the rear by one of defendant's street cars. He said the impact jerked his head back and threw him upon the steering wheel; and that soon afterwards, he commenced to suffer pains in his head, neck, back and right side, and nervousness, numbness and other distress. Professional treatment has not relieved him. Shortly before the trial, a number of X-ray pictures were made of him. No fractures or vertebral displacements attributable to this collision were then disclosed. Three physicians, witnesses for him, thought his symptoms indicated that a muscle in the neck was injured. They were of opinion that it was so much damaged in the collision that through spasm and contraction, it pressed on the brachial plexus and the subclavian artery, causing irritation, poor circulation in the artery, pain at times and numbness at others. Three physicians, witnesses for defendant, were of opinion that the X-ray pictures disclosed an osseous gumma ("a tumor or growth") on plaintiff's right clavicle, caused by syphilis in the tertiary stage; that the gumma could produce pain in the region of the right side; that tertiary syphilis could cause headache, nervousness, numbness and other symptoms, and that plaintiff had syphilis. Two of these physicians were of opinion that it caused plaintiff's ills; the third was not questioned on that sequence. Plaintiff denied he ever had syphilis or had been treated for it. One of his witnesses, a Dr. Carter, had treated him for occasional injuries since 1928. This physician testified that several blood tests of plaintiff were made during that period, none of which indicated syphilis, and that he had never treated him for it. After verdict, defendant filed, in support of a motion for new trial, affidavits relating to newly discovered evidence. Counter-affidavits were filed and the motion overruled. We granted defendant a writ of error solely upon this new evidence.

There is much swearing and contra swearing in the affidavits; but they disclose, without contradiction, that on

January 12, 1934, Dr. Carter had a specimen of plaintiff's blood examined at Hugh Carr Memorial Laboratories in Fairmont; that Edna Blossom, a technician there, made a Kahn blood test (a recognized test for syphilis), the result of which she reported to Dr. Carter, and a card record of which was placed on file in the Laboratories, as follows:

KAHN RECORD

Rexroad Foster                                          Dr. C. J. Carter

1-12-34............................4 Plus.

that the expression "4 Plus" means, in medical language, a strongly active case of syphilis; that the Laboratories were sold in 1938, its clinical records purchased by Dr. S. S. Hall (of Clarksburg) and stored temporarily in a laboratory room of Dr. Carter at Fairmont; that after the verdict herein, Dr. Hall, upon request of a physician acting in behalf of defendant, searched those clinical records, and found in them the card above; that a few days later, Dr. Carter went to the law office of Meredith and Bell, attorneys for defendant, and stated to them that no report of the test shown on this card was made to him, but that his own records disclosed he had given plaintiff a "shot" of 606 (a specific for syphilis) on January 11, 1934; that upon being asked why the shot, if plaintiff did not have syphilis, Dr. Carter replied "It looked suspicious;" that the attorneys for defendant had no information, until after the trial, which would lead them to suspect that a blood test of plaintiff had ever been made by Laboratories, nor did they even know the whereabouts of its records; and that after being advised shortly before the trial that the X-ray pictures disclosed the gumma, they had "followed out every lead and done everything that they knew to be done to ascertain the facts with reference thereto."

Dr. Carter made an affidavit that on or about January 11, 1934, he had plaintiff's blood tested at the Laboratories and did receive from it a report of that test; that he is unable now to find the report but according to his recollection it was negative and not 4 plus; that though "perplexed" by the card in the Laboratories' files, "to the best of his knowl-

edge", the card was made by the technician as "an index record only" and the report made to him was the official record; and that he overlooked having given plaintiff the shot of 606 when he testified in this case. (He denied the statements of two affiants that he had admitted to them giving plaintiff, in 1934, nine injections of 606 and six injections of bismuth, a full course of treatment for syphilis.)

(1) The Laboratories' card was not discovered until after the verdict. (2) It was not incumbent on counsel for defendant, before the trial, to have the Laboratories' records searched, they having no reason then to believe, or even suspect, that the records contained evidence of a test of plaintiff's blood. (3) The evidence of defendant at the trial tending to show that plaintiff had syphilis was simply opinion evidence that he had a syphilitic tumor in a bone; the Laboratories' card is factual evidence of syphilis in his blood, is dissimilar to the previous evidence, and is therefore not cumulative. (4) If this card is not discredited before the jury more than it has been by the counter-affidavits, it ought to produce a different result at a second trial. (5) While the card does bring the testimony of Dr. Carter under grave suspicion, that effect is secondary; its primary effect is to establish that plaintiff had an active case of syphilis in 1934. Thus the newly discovered evidence meets the five tests prescribed by this Court in *Halstead* v. *Horton,* 38 W. Va. 727, 18 S. E. 953, and *Insurance Co.* v. *Power Co.,* 81 W. Va. 298, 94 S. E. 372.

The judgment is reversed, the verdict set aside, and defendant awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded defendant.*