SINOPOULO et al. v. PORTMAN et al.

No. 29506. March 9, 1943.

Rehearing Denied June 8, 1943.

*137 P. 2d 943.*

Everest & Halley, James C. McWilliams, Twyford & Smith, William J. Crowe, and Fred A. Daugherty, all of Oklahoma City, for plaintiffs in error.

Rex H. Holden and R. B. Holtzendorff, both of Oklahoma City, for defendants in error.

Doerner, Rinehart & Stuart, of Tulsa, Embry, Johnson, Crowe & Tolbert, and Calvin Boxley, all of Oklahoma City, and Bradford J. Williams, Fenelon Boesche, Richard P. Ryan, and Hugh Webster, all of Tulsa, amici curiae.

OSBORN, J. The appeal in the instant case is prosecuted by John Sinopoulo, Peter Sinopoulo, James S. Twyford, and Solon W. Smith, hereinafter referred to as appellants, from an order of the district court of Oklahoma county charging certain mineral interests of said appellants with a proportionate part of the expenses assumed and incurred in a receivership proceeding wherein the receiver, under the direction of the court, had completed the drilling of an oil well to production upon the property in which the appellants held said mineral interests.

The action was instituted on July 13, 1938, by Leo J. Portman against H. R. Hollenback, the owner of an oil and gas lease upon the premises herein involved and the driller of a well thereon, in which action the plaintiff sought recovery of an indebtedness of $40,000, the establishment of a lien upon the property to protect the debt, and the appointment of a receiver. Subsequently, numerous persons and corporations, having various interests in the oil and gas leasehold or having liens thereon for labor or material, were named as parties defendant.

In order to set out the nature of the interests of appellants, it will be necessary to recite a portion of the history of the matter subsequent to the execution of the original oil and gas lease upon the premises. In February, 1934, the owners of the property, which consists of certain city lots within the city of Oklahoma City, executed an oil and gas lease thereon, in the usual form, to the Hud Oil & Refining Company. By the terms of the lease a royalty of ⅛th was reserved to the property owners. On January 14, 1936, Hud assigned this lease to Sunray Oil Company. On January 26, 1936, Sunray executed an "Oil Payment Contract" in favor of James S. Twyford and Solon W. Smith, which is, in part, as follows:

"Now therefore, by direction of the owners of said leasehold, and as part of the purchase price thereof, the said purchaser, Sunray Oil Company, does hereby agree to pay James S. Twyford and Solon W. Smith, Ten Thousand ($10,000.00) Dollars out of one-sixteenth ($\frac{1}{16}$) of the ⅞th of the oil and/or gas produced from said described premises, if, as and when said oil and/or gas is produced and saved.

"This agreement is subject to all the terms and obligations of said original lease."

On April 6, 1936, John and Peter Sinopoulo became the owners of the real estate involved except one-half of the royalty reserved as aforesaid and subject to the outstanding lease. On January 29, 1938, Sunray entered into a contract in writing with Hollenback for the drilling of a well on the leased premises, the consideration to Hollenback for drilling the well being the obligation of Sunray, upon certain conditions, to assign the lease to Hollenback, (1) subject to the "oil payment contract in favor of James S. Twyford and Solon W. Smith" and (2) the right of Sunray to:

"Reserve one-eighth (⅛) of seven-eights (⅞) of all the oil, gas, casing-head gas, and other minerals, produced, saved and sold from said premises until it shall have received from the proceeds from said interest the sum of Thirty-five Thousand Dollars ($35,-000.00)"

—subject to further restrictions which are embodied in the assignment of the lease subsequently executed and to be quoted. On April 20, 1938, Sunray executed an assignment of the oil and gas lease to Hollenback, which is, in part, as follows:

"Subject, however, to that certain oil payment contract in favor of James S. Twyford and Solon W. Smith in the amount of Ten Thousand Dollars ($10,-000.00) to be paid out of $\frac{1}{16}$ of $\frac{7}{8}$ of the oil and/or gas produced from said described premises, if, as and when said oil and/or gas is produced and saved.

"Sunray Oil Company hereby retains and reserves $\frac{1}{8}$ of $\frac{7}{8}$ of all the oil, gas, casinghead gas and other minerals produced, saved, and sold from said premises until it shall have received from the proceeds from said interest the sum of Thirty-five Thousand Dollars ($35,-000.00), provided, however, that Sunray Oil Company is to receive from said reserved payment $\frac{1}{16}$ of $\frac{7}{8}$ of all the oil gas, and other minerals produced, saved and sold from said premises during the period of time in which the owners of the oil payment contract to James S. Twyford and Solon W. Smith is being paid, and thereafter is to receive said $\frac{1}{8}$ of $\frac{7}{8}$ of said products until said amount so reserved by Sunray Oil Company has been fully paid, and it is further expressly understood and agreed that the interest hereby reserved shall be delivered to the pipe line to the credit of Sunray Oil Company free and clear of all cost and expense of every kind or character."

On April 27, 1938, Sunray assigned to Sinopoulo "all right, title, and interest . . . in and to reservation and rights thereunder reserved or belonging to . . . by reason of the exception and reservation above described." Fractions of Twyford and Smith's interest have been assigned to others, who are parties hereto, but whose interests will not be separated and identified for the purposes of this decision. At this time the 8/8ths mineral interests are divided and affected as follows: $\frac{1}{16}$th royalty by the original owners and $\frac{1}{16}$th royalty by Sinopoulo, which interests are not affected by this action; $\frac{1}{8}$th of the $\frac{7}{8}$ths working interest owned by Hollenback is affected by the oil payment contract and reservations in favor of Twyford, Smith, and Sinopoulo; $\frac{7}{8}$ths of the $\frac{7}{8}$ths working interest is properly chargeable with the expenses, and the controversy turns on whether the $\frac{1}{8}$th of the $\frac{7}{8}$ths interest, chargeable with payment of the claims of appellants, shall also be charged with a proportionate share of the expenses of the receivership.

The trial court held that the receiver was entitled to have the entire production of oil and gas from the leasehold estate, except the royalty owners' $\frac{1}{8}$th of such production, and said receiver was authorized and directed to receive and collect the proceeds from such production and apply the same to the expenses of production and operation of the leasehold estate. The court continued the cause to a further date for consideration of all other issues involved, specifically as to the rights of the parties as between themselves. No contention is made that this order is non-appealable for lack of finality. Since the question is not raised, it will not be considered, and our opinion will be confined to the issues presented by the briefs.

At the time of appointment of the receiver, Hollenback had drilled a well on the premises to a depth of approximately 6,400 feet, but due to financial difficulties, was unable to proceed to drill the well to the producing sands and equip the same for production, but, on the other hand, it was necessary, in order to produce oil, that the well be drilled to a greater depth (approximately 75 feet) and then be equipped for the production of oil.

Hollenback was indebted to a considerable extent and under the allegations of the petition he had agreed to discharge said indebtedness out of the funds hoped to be realized after production from said land. It is obvious that Twyford, Smith, and Sinopoulo were vitally interested in seeing that said well produced oil and that the oil was sold in order that the fund to which

their assignments related could come into existence and be paid over to them.

On July 13, 1938, without notice to them, the court made an order appointing a receiver, but subsequent thereto they and other parties were made parties to the proceeding and the court made an order after hearing, but without notice to them, wherein it found that a receiver was necessary to take charge of the leasehold in its entirety and of the interest of each and every person, firm, or corporation owning any interest or right therein, that an emergency existed and that unless a receiver was immediately appointed to take charge of, preserve, manage and operate said leasehold estate and the oil and gas well thereon, there was grave danger that all of said property would be totally and wholly lost and rendered valueless, and the receiver was ordered to hold, manage, and operate the leasehold estate and the well partially completed thereon, subject to the further orders and directions of the court.

Thereupon, the receiver continued the drilling operations and drilled the well to production, and of necessity incurred debts for labor and materials in the drilling, completion, and operation of said well. The question is whether or not this indebtedness incurred by said receiver can be charged against the whole of the leasehold estate, or whether or not the funds derived from the interests designated in the assignments of Twyford and Smith and of Sinopoulo should be paid to them prior to the payment of the indebtedness incurred by the receivership as above set forth. It is not contended that the costs incurred by the receiver were unnecessary to the preservation and realization of the property, or that same were excessive. It is contended only that the court is without power under any circumstances to displace said vested rights of appellants except with their consent, and that, not having consented herein, the order of the court is wholly unauthorized.

It is a general rule that the court will not authorize the incurring of indebtedness by a receiver of a private corporation and give said indebtedness priority over existing liens without the consent of the lienholders, for the general purpose of carrying on the business of a corporation. James v. Lemler, 139 Okla. 199, 281 P. 798. To this rule, however, there is an exception which is as well recognized as the rule itself, that is, that the court may displace prior liens where it is necessary to raise money to preserve and realize upon the assets of a corporation, and for this purpose a court of equity may authorize a receiver to incur indebtedness and establish the same as a paramount lien upon the corpus of the property. In the case of Klages v. Freier, 225 Iowa, 586, 281 N. W. 145, it was said:

"We find that the Circuit Court of Appeals, in the case of Colorado Wool Marketing Ass'n v. Monaghan, 10 Cir., 1933, 66 F. 2d 313, had this to say, at page 315:

" 'The first duty of a court having possession of property is to preserve it for the litigants. . . . (citing authorities) In Wallace v. Loomis, 97 U. S. 146, 162, 24 L. Ed. 895, the court, speaking of the authority conferred upon receivers to borrow money to preserve property in their possession, said:

' "It is a part of that jurisdiction always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands." Necessary expenses incurred in the preservation of property while in the custody of the court should be paid before the court passes over the property or its proceeds to those adjudged to be entitled thereto. . . . (citing authorities) The case of Hanna v. State Trust Company (C.C.A. 8th, 70 F. 2, 30 L. R. A. 201) has been frequently followed in other circuits. There Judge Caldwell laid down the general rule that a court of equity may not, over the objection of lienholders, subordinate a lien to the expenses of operating a private business in receivership; but in so doing he stated that expenses of administration, realization and preservation are not within the rule, adopting for that purpose the following language of the court in Raht v. Attrill, 106 N. Y. 423, 13 N. E. 282, 285, 60 Am. Rep. 456:

" ' "The act of the court in taking charge of property through a receiver is attended with certain necessary expenses of its care and custody; and it has become the settled rule that expenses of realization and also certain expenses which are called expenses of preservation, may be incurred under the order of the court on the credit of the property; and it follows from necessity, in order to the effectual administration of the trust assumed by the court, that these expenses should be paid out of the income, or, when necessary, out of the corpus, of the property, before distribution, or before the court passes over the property to those adjudged to be entitled." ' "

In the case of Board of Education v. Zink, 101 N. J. Eq. 78, 137 Atl. 713, the court held:

"A receiver who, under court direction, carries on the business of a bankrupt concern for the purpose of realizing and preserving corporate assets is entitled to his expenditures and remuneration out of the funds his efforts helped to create, before payment to an assignee of the fund, by assignment from the corporation."

In the case of Hewitt v. Great Western Beet Sugar Co., et al., 20 Idaho, 235, 118 P. 296, it was said:

"In the case of Dalliba v. Winschell, 11 Idaho, 364, 82 P. 107, 114 Am. St. Rep. 267, this court said: 'That a court of equity has the power and authority. in a proper case, to appoint a receiver to take charge of the property, and to care for and protect the same, and decree the charges therefor as a prior claim and lien against the property, paramount to all mortgages or other liens or incumbrances.' Many other authorities might be cited in support of this proposition, but this case announces the law fully in this state on that subject."

In the case of Cody Trust Co. v. Hotel Clayton Co., 293 Ill. App. 1, 12 N. E. 2d 32, it was pointed out that the question of making receiver's certificates a first lien superior to prior vested liens is purely an equitable one, and to be determined upon just and equitable principles, as the circumstances of the case shall warrant. Following the case of Fleming v. Anderson, 220 Ill. App. 570, it was held that such receiver's certificates might be issued and made a prior lien when it is made very clear to the court that it is for the best interests of all parties that the power be exercised in order to preserve the corporate property or franchise of the corporation.

We quote from the body of the opinion in the case of Kent v. Lake Superior Canal Co., 144 U. S. 75, 89, 12 S. Ct. 650, as follows:

" 'Under the provisions of the acts of Congress granting the lands covered by the mortgages,' said Mr. Justice Strong, speaking for the court in Jerome v. McCarter, 94 U. S. 734, 738, 'the lands reverted to the United States, unless the ship canal should be finished within a fixed period, and that period was passing away when the order was granted to the receiver to raise money for completing the canal by the issue of certificates secured by his mortgage. The canal was unfinished, and there were in the receiver's hands no funds to finish it. Hence there was a necessity for making the order which the court made—a necessity attending the administration of the trust the court had undertaken. The order was necessary alike for the lien creditors and for the mortgagors.' "

When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver as its officer for the benefit of those whom the court shall ultimately adjudge to be entitled to it. Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 S. Ct. 406, 52 L. Ed. 528. The receiver is an arm of the court. Expenditures incurred by the court during a receivership are in reality costs of administration. They constitute expenditures which are necessary to enable the court to exercise its jurisdiction. Malm v. Home Riverside Coal Mines Co., 152 Kan. 419, 103 P. 2d 798.

Even in cases of private corporations where lienholders either expressly or impliedly consent to a receivership of the property over which they hold a lien, and the receivership benefits their property, either by preserving it or realizing it or otherwise, then such lienholders may have to bear their portion of the costs and expenses of the receivership. 1 Clark on Receivers, § 641, p. 879. To the same effect, see the following cases: Title Ins. & Trust Co. v. California Development Co. et al., 171 Cal. 227, 152 P. 564; Bailey v. Bailey et al., 262 Mich. 215, 247 N. W. 160; Stacey et al. v. McNicholas et al., 76 Ore. 167, 148 P. 67; Westinghouse Elec. Mfg. Co. v. Barre & Montpelier Traction & Power Co. et al., 98 Vt. 130, 126 Atl. 594; Bliss et al. v. Linden Cemetery Ass'n et al., 90 N. J. Eq. 404, 107 Atl. 594; Standard Oil Co. of New York v. Nashua St. Ry., 189 Atl. (N. H.) 166; Turner et al. v. State Wharf & Storage Co., 263 Mass. 92, 160 N. E. 542; C. H. Sprague & Son, Inc., v. Price Hill Colliery Co. et al., 122 W. Va., 361, 10 S. E. 2d 574; Harrison Improvement Co. v. Guardian Trust Co. of New Jersey, 106 N. J. Eq. 445, 151 Atl. 103; Annotation at 40 A. L. R. 244.

We conclude that the trial court did not err in holding that the portion of the working interest out of which appellants' claims were to be paid was chargeable with a proportionate share of the expense of realizing and producing oil from the premises, but it does not follow that said interest is chargeable equally with the remainder of the working interest. Said unencumbered portion of the working interest is chargeable primarily with said expense, and the remainder is only secondarily liable. In the exercise of the power to marshal assets, the trial court will make a final adjustment of the rights of the various parties upon the basis of the liability of the respective interests, as above stated.

Accordingly, the cause is remanded, with directions to proceed in accordance with the views herein expressed.

BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, C.J., GIBSON, V.C.J., and RILEY, J., dissent.