THEODORE CARL MILLER. Trustee for the use and benefit of Continental Mortgage Investors. and CONTINENTAL MORTGAGE INVESTORS, Plaintiffs-Appellees *v.* LEADERSHIP HOUSING SYSTEMS. INC., Defendant-Appellant. and HAWAII LOA RIDGE NOMINEE. INC.. et al.. Defendants

NO. 6053

OCTOBER 14. 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ.. and FUKUSHIMA. Circuit Judge. in place of KIDWELL, J.. Disqualified

322

Defendant-appellant Leadership Housing Systems, Inc., (hereinafter appellant) is one of several defendants named in a mortgage foreclosure action filed by plaintiffs-appellees Theodore Carl Miller, trustee for the use and benefit of Continental Mortgage Investors, a Massachusetts business trust, and Continental Mortgage Investors (hereinafter appellees). Appellant appeals from an interlocutory order of the trial court granting instructions and other relief, leave having been granted by the trial court for such purpose. We reverse the order insofar as it creates a first lien solely upon the jughandle parcel of the property described in the foreclosure action.

Appellant contends that the trial court committed several errors: By authorizing the receiver to take possession of the jughandle parcel and proceeding with the construction of improvements thereon, without a prior determination that appellees were entitled to a first lien on such property; by summarily rendering appellant's recorded first mortgage interest in said parcel worthless by subordinating it to the court's judicially imposed lien to secure the construction funds to be advanced to the receiver; by adjudicating without trial the applicability of the subordination clause contained in appellant's mortgage; and by failing to authorize less drastic means for the protection of the property held by the receiver.

The complaint was filed by appellees on June 27, 1975, to foreclose a mortgage made by Hawaii Loa Ridge Nominee, Inc. (hereinafter mortgagor), covering several adjoining parcels of land in Honolulu situated at Hawaii Loa Ridge (hereinafter Ridge property) and also a separate parcel (hereinafter jughandle parcel), located below the Ridge property between Kalanianaole Highway and the shoreline. The mortgage expressly describes the Ridge property; it does not describe the jughandle parcel. The complaint, *inter alia*, alleges: That the mortgagor concurrently with the execution of the note and mortgage to the appellees represented to them that the Ridge property would be developed into a residential subdivision of 700 single-family residential units in three phases, or alterna-

tively, 1,400 planned unit development residences in three or more phases; that since the date of such note and mortgage it became necessary for the mortgagor to purchase the jughandle parcel in order to develop the Ridge property as proposed by the mortgagor; that the jughandle parcel was purchased with funds made available to the mortgagor by appellees; that although appellees were to receive additional security for funds advanced for the purchase of the jughandle parcel no mortgage has been executed by the mortgagor to appellees; that the appellant had knowledge, actual and constructive, of the covenants and agreements between the mortgagor and appellee Continental Mortgage Investors (hereinafter CMI), including the purpose and use to which funds disbursed by CMI were to be put in connection with the purchase of the jughandle parcel; that notwithstanding the foregoing, and for no consideration, the mortgagor executed a mortgage on the jughandle parcel in favor of appellant; and that appellees are accordingly entitled to a first mortgage lien on the jughandle parcel.

Appellant's answer to the complaint was filed on August 28, 1975. It denied any knowledge by appellant of the covenants and agreements between the mortgagor and CMI as alleged in the complaint. Although the answer admitted that the mortgagor had executed a mortgage in appellant's favor on the jughandle parcel, it denied all allegations that this transaction was without consideration and that the delivery of the mortgage to appellant was in derogation of the rights of CMI. At the time appellant filed its answer, it also filed a counterclaim for the foreclosure of the mortgage held by it covering the same properties set forth in the complaint against appellees and the other named defendants.

On June 30, 1975, on appellees' ex parte motion, the trial court appointed a receiver to take charge of the Ridge property and the jughandle parcel.[1] On August 20, 1975, the

---

[1] In the order of June 30, 1975, appointing a receiver, the court authorized and ordered the receiver to take possession of all real property described in the complaint and to:

"[O]perate and manage the same pending the appointment of a commissioner

receiver filed a motion for instructions and other relief. This motion was predicated upon a letter dated August 14, 1975, from Continental Advisors, Inc., acting as agent for CMI.[2] The receiver sought instructions from the court in regard to funds offered by CMI to be expended for improvements to the jughandle parcel. The receiver also moved for a judicial determination of whether such funds, if obtained, should constitute a first lien on that parcel. The trial court after hearing all interested parties granted the receiver's motion and entered an order on September 10, 1975, authorizing the receiver to accept the sum of $485,000.00[3] from CMI for the construction of drainage and other related improvements within the jughandle parcel and the access parcel[4] located across Kalanianaole Highway and further ordered that the sum advanced by CMI constitute a first lien against the jughandle parcel in favor of appellees.

---

herein, to collect the rents, issues. and profits, keep an accounting thereof and to operate and manage in all respects whatsoever the said property and development project, including without limitation, receiving funds from Plaintiff Continental Mortgage Investors under and pursuant to its mortgage and loan agreement and disbursing same to continue all grading and construction operations presently in progress in connection with said real property and the development plans therefor until the further order of the Court."

[2] The material part of this letter was as follows:

"CMI has agreed to advance funds as required to complete the planned improvements for the 'Jughandle Intersection' parcel in an amount not to exceed $310,000. conditioned upon the following:

(1) All construction will be completed prior to December 1, 1975.

(2) All advances for improvements will bear an interest rate of 5% over the floating prime rate at Chemical Bank. New York.

(3) Assurance. to the satisfaction of CMI counsel. that all funds advanced constitute a first lien on the property.

(4) Final execution of a forebearance agreement with the Cassiday interest regarding their first mortgage and a valid purchase option for the 'Access Parcel.' "

[3] This amount represents an increase of $175.000 from the original figure and CMI agreed to the augmented sum at the time of hearing on the motion for instructions and other relief.

[4] The condition that the construction work be completed by December 1. 1975 imposed by CMI was withdrawn at the hearing.

Appellant moved to reconsider the order granting instructions and other relief on September 10. 1975. This motion was denied after hearing on October 2, 1975, and appellant was granted leave to appeal the order to this court.

Appellant's first contention that the trial court committed error by authorizing the receiver to take possession of the jughandle parcel and proceeding with the improvements thereon, *without prior determination that appellees were entitled to a first lien on such property*, seems to focus our attention on the validity of the order of June 30, 1975, appointing a receiver to take charge of the property described in the complaint, including the jughandle parcel. We hold that appellant is precluded from raising for the first time on appeal any contention that the order of June 30, 1975, is erroneous, a question which was not presented in the trial court. *Fujioka v. Kam*, 55 Haw. 7, 514 P.2d 568 (1973); *Kawamoto v. Yasutake*, 49 Haw. 42, 410 P.2d 976 (1966); *Bank of Hawaii v. Char*, 43 Haw. 223 (1959), *aff'd*, 287 F.2d 51 (1961), *cert. den.*, 366 U.S. 972 (1961); *McChesney v. Kona Sugar Co.*, 15 Haw. 710 (1904). Although appellant contends the trial court erred in several other particulars, we believe the sole relevant question presented to us relates to the correctness of the ruling by the trial court that the sums made available by CMI to the receiver be secured as a first lien on the jughandle parcel. The order granting instructions and other relief provided:

"V. All sums loaned or advanced to the Receiver as above provided shall constitute a first lien upon the Jughandle Parcel."

This part of the order is justified by the trial court's finding that "The funds advanced to the receiver pursuant to said loan commitment for the construction of improvements on the Jughandle Parcel are entitled to first lien priority on said parcel." This finding seems in apparent conflict with an earlier finding, viz: "Plaintiff Continental Mortgage Investors has agreed to loan to the Receiver, against the credit of the receivership property, the sum of $485,000 for the construction of the Jughandle Intersection and Drain Outlet on a

portion of the property subject to the receiver's possession, control, and custody."

HRCP, Rule 52(a)[5] provides in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness." We have held in numerous cases that a trial court's findings of fact may not be set aside unless clearly erroneous, and that for such findings to be clearly erroneous, the record must leave the appellate court with a firm and definite conviction that a mistake has been committed. *Honda v. Higa,* 52 Haw. 311, 474 P.2d 708 (1970); *Ed Klein, Inc. v. Hotel Kaimana, Inc.,* 51 Haw. 268, 457 P.2d 210 (1969); *Peine v. Murphy,* 46 Haw. 233, 377 P.2d 708 (1962).

The record of the hearing on the receiver's motion for instructions is devoid of evidence showing that the jughandle parcel alone should bear all of the cost of constructing the improvements. We are convinced from such record that these improvements will inure entirely to the benefit of the Ridge property. The Ridge property was acquired by the mortgagor for the explicit purpose of developing it for residential use, and the mortgagor was in the process of improving the land for this purpose immediately prior to the institution of this action. In 1973, after the mortgagor had executed a first mortgage of the Ridge property to the appellees, the

---

[5] The full text of HRCP, Rule 52(a) reads as follows:

"Rule 52. FINDINGS BY THE COURT.

(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58: and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

mortgagor acquired the jughandle parcel specifically for traffic access purposes for the Ridge property. Obviously if these improvements are constructed according to existing plans entitled "Construction Plans Hawaii Loa Ridge, Jughandle Intersection and Drain Outlet," they will not independently contribute to or bestow any substantial value upon the jughandle parcel. Actually, the presence of these improvements within this parcel may be an impediment to its full use and enjoyment. However, since appellant was involved in the development of the Ridge property and it was fully aware of the mortgagor's intention and purpose for acquiring this parcel, even before the execution of the recorded first mortgage to appellant, it should not complain. As a matter of fact, appellant's counsel admitted during the hearing on the receiver's motion that these improvements are necessary if the entire development were to proceed.

In view of these factual circumstances, any finding that the jughandle parcel alone is subject to the burden of the payment of cost for these improvements is inequitable, unjust and arbitrary. Therefore, we conclude that the record in this case leaves us with a firm and definite conviction that a mistake has been made with respect to the finding that funds advanced to the receiver pursuant to said loan commitment for the construction of improvements on the jughandle parcel are entitled to first lien priority on said parcel. This finding, being clearly erroneous, is set aside. *Honda v. Higa, supra; Ed Klein, Inc. v. Hotel Kaimana, Inc., supra; Peine v. Murphy, supra.*

Under general equitable principles, the costs and expenses of a receivership incurred in preserving its assets are administrative expenses, chargeable to the assets of the receivership. *Brown v. Bivings,* 316 P.2d 855 (Okl. 1957); *Seidler v. Branford Restaurant, Inc.,* 97 N.J. Eq. 153, 128 A. 166 (1925); *Bliss v. Linden Cemetery Association,* 90 N.J. Eq. 404, 107 A. 594 (1919); 2 Clark, Law of Receivers, 3rd ed., 1959, § 637. Such costs and expenses may be properly incurred by the receiver for repairs and even for improvements to property if they are necessary to preserve the property in the

hands of the receiver. *Sinopoulo v. Portman*, 192 Okl. 558, 137 P.2d 943 (1943); *Antoine v. James E. Nelson Co.*, 265 Mass. 214, 163 N.E. 903 (1928); *cf.*, *McChesney v. Kona Sugar Company, supra*. The concept of the word "preserve" has been held to include the completion by a receiver under the authorization of the court of a construction project begun by a corporation before insolvency. *Pemberton Lumber & M. Ind. v. Wm. G. Ridgway Const. Co.*, 38 N.J. Super. 383, 118 A.2d 873 (1955); *Girard Life Ins. Annuity and Trust Co. v. Cooper*, 162 U.S. 529 (1896); *see*, Clark, Law of Receivers, 3rd ed., 1959, § 638.2. In *Pemberton Lumber & M. Ind. v. Wm. G. Ridgway Const. Co., supra*, 38 N.J. Super. at 388, 118 A.2d at 875, the court stated:

> "The word 'preserve' should not be deemed to be employed in a strict literal sense. It connotes not only the idea of protection of the insolvent corporation's property from physical deterioration or destruction, but as well of completion of an improvement of real or personal property undertaken by said corporation before its adjudicated insolvency, to the end that said property may attain the final condition initially intended. There are sufficient facts present to warrant the authorization of the issuance of such certificates prior in lien to other established liens and encumbrances if it is made to appear that there is a reasonable probability that by the expenditure of the additional sums so realized by the receiver for the purpose of completing such fabrication or construction, upon the completion thereof the property will be placed in the form and condition initially contemplated, and also that there is a reasonable expectancy that such property, in its completed form, will be more readily vendible than if it were to remain in unfinished form. Implicit in such a conclusion must be, of course, a finding that by completing the fabrication or construction, a sum would probably be realized upon a sale which will be in excess of the amount which could be received for the incompleted article, plus the cost of completion. The property would thereby be figuratively 'preserved' in its intended final

condition and a greater sum realized for distribution to creditors, general and special, than if the receiver were forced to leave it in its incomplete less salable condition.''

Accordingly, we hold that the trial court, based upon the evidence and exercising its sound discretion, had authority to order the receiver to proceed with the improvements within the jughandle parcel. Such instruction should be given to a receiver by the court only sparingly and with great caution.

Ordinarily, under general principles of equity mentioned above, we would treat the cost of these improvements as administrative expenses of the receivership and charge the cost to the assets of the receivership. However, in the nature of the setting of this case where the benefits from these improvements will only accrue to the Ridge property, we hold that funds advanced for such construction should be charged to the Ridge property. *Routh v. Thurman*, 189 Okl. 358, 117 P.2d 106 (1941); *Marsh v. Arthur C. Marsh Co.*, 153 Ore. 134, 55 P.2d 1111 (1926).

Paragraph V of the order granting instructions and other relief, which imposed a first lien against the jughandle parcel for the amount advanced to the receiver, is reversed, and this cause is remanded to the trial court for further proceedings consistent herewith.

*Albert I. Moon, Jr. (Ashford & Wriston* of counsel), for defendant-appellant.

*Gilbert D. Butson & Peter G. Wheelon (Anthony, Hoddick, Reinwald & O'Connor* of counsel) for plaintiff-appellee.

*Don Gelber* for Receiver, Amicus Curiae.